The People of the State of Illinois, Plaintiff-Appellee, v. Frederick Bailey, Defendant-Appellant.

Gen. No. 50,631.

First District, First Division.

October 17, 1966.

Philip M. Basvic, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Sheldon Schapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Frederick Bailey, was convicted of murder after a jury trial and was sentenced to a term of not less than twenty-five nor more than fifty years in the penitentiary.

On appeal it is the defendant's contention that (1) the State failed to prove the corpus delicti of the crime of murder; (2) that the defendant was not found guilty of murder beyond a reasonable doubt; (3) that the conduct of the trial judge prevented the defendant from having a fair and impartial trial; (4) that allowing the defendant's statement, given to an Assistant State's Attorney, to be taken to the jury room was error; (5) that the defendant was represented by incompetent counsel; (6) that the court erred in disallowing certain of defendant's jury instructions; (7) that prejudicial argument of the prosecutor prevented defendant from receiving a fair and impartial trial; and (8) that the sentence imposed was excessive.

█ We first consider whether the State failed to prove the corpus delicti of the crime of murder. Lena Burke, widow of the victim, testified that she saw her husband on June 6th, and described him to be in good health. She again saw her husband that night in the emergency operating room of a hospital and the next time she saw him was in the county morgue the following morning. The defendant argues that these facts may give rise to an implication or circumstance that he was dead, but that more than this is required to establish the corpus delicti citing People v. Benson, 19 Ill2d 50, 166 NE2d 80, and People v. Wilson, 400 Ill 461, 81 NE2d 211. In Benson the court concluded that there was a reasonable doubt that the deceased came to her death from the illegal act of intercourse or from any criminal agency of the defendant, stating that "When one is charged with murder the elements which must be established are proof

of death and proof of a criminal agency causing death, both of which must be established by the evidence beyond a reasonable doubt. (People v. Wilson, 400 Ill 461.)" P 58. In the instant case the defendant testified that he purchased a gun on June 6th; that during an automobile ride with the deceased on that day they argued and he had the gun in his hand when the deceased attacked him and somehow the gun was discharged. A coroner's pathologist testified that his examination of the body of the deceased on June 7th, revealed three bullet wounds, and in his opinion the cause of death was a bullet wound of the aorta. The evidence clearly establishes that the corpus delicti was proven.

It is the defendant's further contention that he was not found guilty of murder beyond a reasonable doubt. He points out that murder has been defined as the unlawful killing with malice aforethought, either express or implied, People v. Papas, 381 Ill 90, 44 NE2d 896, and that the element that distinguishes murder from manslaughter is malice aforethought and that ". . . the word 'aforethought' implies, requires an action of the brain prior to the act." People v. Cochran, 313 Ill 508, 519, 145 NE 207. He argues that had the shooting taken place at the time he was at the victim's place of business that would be express malice, but instead that after the two of them were together for some two hours at a bar, he drove the car on the expressway and after they had talked about the deceased going with his wife and while on their way to Milwaukee to straighten the matter out the deceased was shot, which he says negates any showing that he acted deliberately or with malice aforethought.

The record reveals that the defendant was suspicious that the deceased was having an affair with his wife. Shortly before he drove to a garage where the deceased worked he purchased a gun which he placed underneath the floor mat of the car. He testified that he did not go there for the specific purpose of seeing the deceased or to

315

threaten him or to do him bodily harm, but went there to see his brother-in-law, although he knew the deceased was also employed there. After waiting there for one and one-half hours, the two of them drove in his brother's car to a tavern, where they had drinks for about two hours and then went for a ride in the automobile. It was during this ride that the deceased brought up the matter of the defendant's wife and an argument started while he was driving the car.

The defendant testified to several versions of what took place before the shooting. On direct examination he said he didn't remember where his gun was, but that the deceased was struggling with him for the gun and it was discharged accidentally. He said when he saw bloodstains on the deceased he drove him to a hospital and took him to the emergency room. On cross-examination he said it was possible that the deceased pulled the gun out from under the seat. Later he said he "reached for the gun" with his right hand while he was driving and the deceased didn't have it. He said he evidently switched the gun from his right hand to his left hand. He said the deceased was trying to get the gun away from him when "I heard the gun firing" and it was accidently discharged. He admitted that he might have told the police officers that he bought the gun to scare the deceased and that at the coroner's inquest it was possible that he may have said that "I had gotten the gun to frighten Levy Burke [deceased] . . . ."

A police officer testified that the defendant voluntarily told him at the hospital that the deceased shot himself and did not say there was a struggle for the gun. A police detective testified that at the police station the defendant told him that he went to the garage to talk to the deceased about an affair he was having with his wife. That he waited until the deceased got off of work. They went to a tavern together, had two drinks and discussed the affair that the deceased was having with his wife. They de-

cided to go to Milwaukee to straighten it out. He then drove on the expressway and while driving picked the gun from underneath the floor mat with the intention of giving it to the deceased to place it in the glove compartment. When he produced the gun Mr. Bailey said that Burke probably thought that he was going to do something with it, and a struggle ensued. Bailey stated that during this struggle he held the gun in his hand and the gun discharged and they continued struggling. During all this time the defendant said he was driving the car. The detective said when he again questioned the defendant he said the purpose for pulling the gun out from underneath the seat was to scare the deceased.

Joseph R. Gill, an Assistant State's Attorney, testified that he went to the police station about 12:30 a. m. on June 7th, and questioned the defendant while a court reporter took notes. The statement was signed by the defendant after he read it and the defendant made corrections. The defendant testified that he may have made the statement that appears in this document that he bought the gun to scare the deceased, but he didn't remember.

 We have carefully reviewed the record and are of the opinion that the jury could not have reached any other conclusion than they did from the unbroken chain of evidence. It is clear that the defendant being suspicious that the deceased was having an affair with his wife purchased a gun, went to deceased's place of work, discussed the matter with him and then shot him three times while they were alone on the expressway. The rule is well established that credibility of witnesses and the weight to be given to their testimony are matters to be determined by the jury and this court will not disturb the verdict unless the evidence is so unreasonable, improper or unsatisfactory to justify our conclusion that there is a reasonable doubt of the defendant's guilt. People v. Woodruff, 9 Ill2d 429, 137 NE2d 809.

■ It is further contended that the conduct of the trial judge prevented the defendant from receiving a fair and impartial trial. The defendant complains of interrogation by the trial judge. The record shows that after the widow had testified that she saw her husband on the morning and evening of June 6th, the court asked: "Mrs. Burke, prior to seeing your husband in the hospital on June 6th, was he in good health?" and she answered, "Yes, he was." No objection was made by the defense. Also while a detective was being questioned on direct examination by the prosecutor the court asked:

> "The Court: Maybe there is one point that needs clarification. Are you saying, officer, that in a second statement the defendant said that he bought the gun to scare the deceased?
> "A. Yes, sir.
> "The Court: Or are you saying he picked the gun from the floor to scare the deceased?
> "A. Both. Both, your honor."

■ ■ We agree with the defendant that while the court has a wide discretion in the conduct of a trial he must not invade the province of the jury by making comments, insinuations or suggestions of his belief in the defendant's guilt. The trial judge, however, has the right to ask questions of witnesses in order to ascertain the facts and elicit the truth concerning the questions at issue, but he must do it in a fair and impartial manner, without showing any bias for or prejudice against the defendant. People v. Filipak, 322 Ill 546, 153 NE 673, People v. Marino, 414 Ill 445, 111 NE2d 534. In Marino the court assumed the role of the prosecutor when he stated: "[T]his is the most fantastic thing I ever listened to in all my life" and when counsel objected to the remark he replied: "You may object. It still is, Go ahead." P 450. In Filipak, the testimony of the prosecuting witness provoked the judge to such an extent that in the presence

of the jury he ordered the witness and the defendants to be taken in custody, and increased their bail substantially. The same witness, after his incarceration identified the defendants as the persons who robbed him. The court went on to say "Whether the doubt of their identity which he expressed on the preliminary hearing, and again on the trial, was removed by the feat of further punishment or by his zeal to tell the truth cannot and need not be determined." P 553. We do not believe that the trial judge by his questions to the witnesses in the instant case showed any impartiality or bias against the defendant, but sought to clarify the testimony for the benefit of the jury.

██ The defendant also claims that the court erred in permitting the defendant's statement to be taken to the jury room. It is also claimed that the court did not act with impartiality when it ruled that the defendant's statement may be admitted and read to the jury. As to the latter incident when the prosecutor offered the statement as an exhibit defendant's counsel said: "I object, the statement is not shown to be voluntary." The prosecutor: "We had a hearing and voluntariness was conceded." While matters of this kind are best said outside the presence of the jury it was the remark of the defendant's counsel that brought it about and we fail to see how the defendant was prejudiced thereby. As to allowing the defendant's statement to go to the jury room we do not find any abuse of discretion to the prejudice of the defendant. People v. Ciucci, 8 Ill2d 619, 137 NE2d 40. In People v. Holcomb, 370 Ill 299, 18 NE2d 878, the case cited by defendant, the lock and keys were not admitted in evidence and it was error to permit the articles to go to the jury room. In People v. Cheney, 368 Ill 131, 13 NE2d 171, the court was not satisfied that the entire dying declaration was properly admitted into evidence and held that it was improper to allow it to be taken to the jury room. Also in the case at bar the defendant testi-

fied that he was never threatened or beaten and it appears to have been a voluntary statement made by him as distinguished from the facts in People v. Spranger, 314 Ill 602, 145 NE 706.

It is further contended that the attorney privately retained by the defendant was incompetent in defending him. "The question whether a defendant was adequately represented by able counsel must be answered solely from the circumstances of each particular case." People v. Francis, 356 Ill 74, 77, 190 NE 106. After consideration we have concluded that the record does not disclose that the defendant was not well represented by able and efficient counsel under the circumstances of this case.

It is also charged that the court erred in refusing two jury instructions offered by the defendant, which are as follows:

> 3. The Court instructs the jury as a matter of law that mere possession of a pistol or revolver by the defendant unlawfully at the time of the homicide is not to be considered as any evidence of guilt on the part of the defendant, but must be only considered with the whole of the evidence.
>
> · · · · · ·
>
> 10. The Court instructs the jury as a matter of law that before you can find the defendant guilty of the charge of murder as alleged in the indictment, the State must prove beyond a reasonable doubt.
>
> > 1. That the defendant unlawfully took the life of the deceased.
> >
> > 2. That the wounding was done with malice aforethought.
>
> The Court further instructs the jury as a matter of law that if the state fails to prove any one of the

320

foregoing points beyond a reasonable doubt, it is your sworn duty as jurors to find the defendant not guilty of the charge as alleged in the indictment.

The court refused the above instructions because they were either duplications of the instructions given by the State or because they were irrelevant, or because they do not state the law accurately. We are of the opinion that the trial court correctly refused these instructions.

The defendant complains that the closing argument of the prosecutor to the jury was calculated to inflame and prejudice the jury and thus prevented him from receiving a fair and impartial trial. The specific material in the argument objected to is as follows:

Your obligation here is not only to decide what took place on June 6, 1964, but also to decide what are the standards for Cook County and for the residents of Cook County now and hereafter. You are here to protect both sides and for the part of the State you are here to protect the life and limb of every citizen. It affects this defendant, it affects all the people interested in this case, and I submit everyone in this State has an interest in this case.

The defendant has nowhere pointed out, nor can we find in the record, that his attorney objected to this argument and ordinarily that which is not objected to at the trial cannot be alleged as error for the first time on review. People v. Swets, 24 Ill2d 418, 182 NE2d 150. However, we do not consider this argument as contrary to a fair latitude allowed the State, nor do we think that the jury was influenced in the manner objected to. "In order to constitute reversible error, remarks by counsel must be such as to give reasonable grounds for believing that the jury was prejudiced thereby and that their verdict was affected by the remarks. (People v. Jenko, 410 Ill 478.)" People v. Allen, 17 Ill2d 55, 63, 160 NE2d 818.

 Finally, the defendant contends that the sentence imposed by the court was manifestly in excess of the proscription of Article II, Section 11, of the Constitution of the State of Illinois and urges that we reduce the sentence. Ill Rev Stats 1963, chapter 38, section 9–1, permits any indeterminate term of years in the penitentiary of not less than 14 years. The grounds for this request is principally based on the errors claimed by the defendant for reversal. The sentence imposed by the court is invested to the judicial discretion of the trial judge within the limits of punishment fixed by the Statute. What was said by the Supreme Court in People v. Moriarty, 25 Ill2d 565, 567, 185 NE2d 688, is appropriate here. "We have always been and are extremely reluctant to interfere with the discretion vested in the trial judge where the sentence is within the statutory range. (People v. Calhoun, 22 Ill2d 31, 36.)"

Having carefully considered all of the assignments of error, we are of the opinion that the defendant received a fair trial, free from reversible error.

For the reasons given the judgment and sentence is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.