(No. 40515.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* C. B. CALDWELL, Appellant.

*Opinion filed March 28, 1968.*

WARD, J., took no part.

Gerald W. Getty, Public Defender, of Chicago, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

The defendant, C. B. Caldwell, was found guilty of murder in a jury trial in the circuit court of Cook County and sentenced to a term of 50 to 100 years imprisonment. The appellate court affirmed (79 Ill. App. 2d 273), and we granted leave to appeal primarily to consider defendant's contention that it was reversible error to allow the jury to take a copy of his written confession with them into the jury room.

The defendant and Mrs. Bessie Mae Woods were life-long acquaintances and neighbors in a Chicago apartment house where defendant lived in a room adjoining the Woods's apartment. On the afternoon of April 24, 1964, the defendant and Mrs. Woods began arguing in the kitchen of her apartment. Mrs. Woods's uncle, William O'Neal, an elderly man who walked with a cane, was in the living room and went to the kitchen when he heard a scuffle. According to O'Neal's testimony Mrs. Woods repeatedly told the defendant that "she didn't have no two dollars" and when O'Neal reached the entrance to the kitchen he

saw defendant holding Mrs. Woods by the collar at which time he told the defendant to stop it or get out of the house. The defendant left but returned within a minute or two with a revolver, pushed O'Neal aside, and headed for Mrs. Woods in the kitchen. The uncle testified that his niece and the defendant went out the back door and he heard a gunshot within about a minute. When O'Neal arrived at the scene of the shooting he found his niece lying on the ground and the defendant gone. The chief pathologist for the Cook County coroner testified that Mrs. Woods died from a bullet in the brain.

About 5:00 P.M. on the day of the shooting Officer Ray Gilhooly, a plain clothes detective assigned to the homicide division of the Chicago Police Department, was sitting in his car parked in front of the Woods's apartment, and observed a man approaching the house. This man glanced toward the parked car, stopped and then resumed walking. The officer heard a young boy call out "Hey, Sonny Boy" which Gilhooly knew to be the defendant's nickname. The officer got out of his car and started to cross the street identifying himself as a policeman, at which point Caldwell stopped and put his hands in the air. The defendant was searched and a .22 caliber revolver with two expended bullet casings was taken from him. According to the officer when asked to relate his side of the story the defendant stated that he had gotten into an argument with the deceased over another boyfriend, and her uncle got involved and hit him with a stick. When the defendant returned with his gun he pushed O'Neal to one side of the living room, and upon hearing a remark from Mrs. Woods who was in the kitchen, defendant told the officer that he hollered, "You started this whole thing." Gilhooly further testified that the defendant stated that he chased after Mrs. Woods when she started out of the kitchen door to the rear yard, grabbed her by the collar at the bottom of the steps, and when she started to struggle "let her have it." The

officer stated that defendant later made a formal statement at the police station which was substantially the same as that given in the squad car, although he admitted on redirect examination that Caldwell never used the exact phrase "that is when I let her have it."

The defendant was taken to the police station about 5:45 P.M. and handcuffed to a radiator while Gilhooly went to the hospital hoping to speak to Mrs. Woods, but she was then unconscious and apparently remained so until her death three weeks later. The officer returned to the station about 1½ hours later and at 8:00 o'clock typed out a statement which Caldwell made in response to the officer's questions and then signed. The following portion of that written confession relates to his intent when he fired the gun: "And I said to her you're the one who started the whole thing. Then about that time, she started to snatch loose from me and I went to fire; and she turned her head and I fired at the same time. And then she fell to the ground. Then I went out in front where some boys were shootin [*sic*] pennies and I told one of them I just shot Bessie. Go back and see how she is. I think she's dead. And then I left."

When the defendant appeared as a witness on his own behalf at the trial he claimed that the shooting actually had been an accident. He testified that he was not arguing with Mrs. Woods but that O'Neal entered the kitchen, hit the defendant with a cane which he held in his left hand and held a knife at the defendant's throat with his right hand saying, "[H]e ain't got no business in here." Defendant claimed that he left the apartment and returned to confront O'Neal with his revolver. At this juncture the defendant asserted that the deceased ran out the back door screaming and he followed her into the yard asking why she was running. He further testified that Mrs. Woods told him that she was afraid of guns and as they were walking back to the house she grabbed his hands, the gun fired and

she fell. The defendant stated that he neither aimed the gun nor intended to shoot the deceased. Apparently the jury disbelieved the defendant's version of the killing and a comment of the trial judge immediately before imposing sentence informs us of one possible reason to justify that disbelief: "He [Caldwell] didn't quarrel with that old man. [O'Neal] The story about the old man was utter nonsense. The old man could barely stand to get on the witness stand. He [Caldwell] was so compassionate about Bessie that he didn't even bother to see whether she was dead or alive."

The conditions under which the defendant's written confession was elicited were thoroughly aired at the trial. While Caldwell admitted signing the confession he claimed that he never read it because "there was no light or nothing" in the room where he was sitting. Officer Gilhooly was recalled by the State and testified that the room in which the defendant was provided with copies of the confession to sign was well lighted with fluorescent lights hanging from the ceiling. The defendant was then called in surrebuttal and testified that he could not read. It was within the province of the jury to determine the weight to be given to the confession in view of Caldwell's late assertion of illiteracy, but we note that the 34-year-old defendant testified on direct examination that he had gone as far as the fifth grade in school and his written confession includes his affirmative answer to the question of whether he could read and write English.

The defendant asks that we remand this case for the limited purpose of having the trial court conduct a hearing to determine whether his written confession was involuntary and therefore improperly admitted. The defendant relies on our prior holdings that an objection during a criminal trial that no proper foundation has been laid for the admission of a defendant's statement is sufficient to require the trial judge to suspend the jury proceedings and conduct a hearing on the voluntariness of a confession

offered by the prosecution for admission. (*People* v. *Thigpen,* 33 Ill.2d 595; *People* v. *Taylor,* 33 Ill.2d 417; *People* v. *Jackson,* 31 Ill.2d 408.) We think, however, that the defendant's reliance on these cases is misplaced because of the time and manner in which he raised the objection in the trial court and because of his failure to raise this contention in the appellate court.

The rule adopted in *Jackson* v. *Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, which requires that an initial judicial determination of the voluntariness of a defendant's confession be made outside the presence of the jury when objection is made to its admission, has long been the law in this State. (See *People* v. *Fox,* 319 Ill. 606, 616-19.) We have said that "a confession may be challenged either by preliminary hearing on a motion to suppress (*People* v. *Spencer,* 27 Ill.2d 320) or by appropriate objection thereto at the trial (*People* v. *Wagoner,* 8 Ill.2d 188), and failure to pursue one of these devices ordinarily precludes consideration of the matter on appeal (*People* v. *Williams,* 26 Ill.2d 190, 192; *People* v. *Jones,* 31 Ill.2d 42, 50) * * *." (*People* v. *Taylor,* 33 Ill.2d 417, 421.) When a defense objection to a confession is made in apt time our procedure provides an appropriate avenue by which knowledge of the existence of a confession can be kept from the jury until its voluntariness has been determined. The United States Supreme Court has pointed out the inherent dangers in permitting a jury to know that a confession was made even though it is eventually determined to be involuntary: "In those cases where without the confession the evidence is insufficient, the defendant should not be convicted if the jury believes the confession but finds it to be involuntary. The jury, however, may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession, a policy which has divided this Court in the past, see Stein v. New York, supra, and an issue which may be reargued in the jury room. That a trust-

worthy confession must also be voluntary if it is to be used at all, generates natural and potent pressure to find it voluntary. Otherwise the guilty defendant goes free. Objective consideration of the conflicting evidence concerning the circumstances of the confession becomes difficult and the implicit findings become suspect." (*Jackson* v. *Denno,* 378 U.S. at 382, 12 L. Ed. 2d at 918, 84 S. Ct. at 1783.) Keeping in mind the fact that a primary purpose of our procedure is to eliminate an involuntary confession from jury consideration at the earliest possible point in the case, we turn to the testimony of Detective Gilhooly which immediately follows his description of Caldwell's oral squadcar confession, and we note that the following testimony was allowed to be elicited by the State, without objection, regarding the defendant's written confession:

"A. [Gilhooly] [A]long with Anton Bielski, C. B. Caldwell, and myself, we returned to area four, homicide office, where C. B. Caldwell gave us a statement substantially the same as he gave before verbally.

Q. This statement you are describing now, was that reduced to writing?

A. Yes, it was.

Q. Who was it typed by?

A. I believe it was typed by me.

Q. Did the defendant sign that?

A. Yes, he did.

Q. I show you what is marked People's Exhibit two for identification, which is a two-page typewritten statement.

(Thereupon said document was marked People's Exhibit number 2 for identification.)

Mr. REGAN: Q. Would you examine that, please? Is that the statement to which you referred that the defendant made?

A. This is the statement.

Q. And the questions and answers recorded there are those that you took down, is that correct?

A. That's correct.

Q. And the defendant signed that in your presence, is that right?

A. Yes, he did.

Q. That particular copy that you have there is a mechanical reproduction of the original, is that right?

A. This is a mechanical reproduction, but the signature is not."

. While we do not hold that the defendant's failure to make a timely objection at the first mention of a written confession thereafter barred him from seeking an independent judicial determination of the voluntariness of the statement, we do find his objection of "no proper foundation", made at the close of the State's case when the written confession was tendered for admission into evidence, to be an untimely effort to invoke the full intended protection of our procedure. We believe that error may not now be attributed to the absence of a hearing on voluntariness in view of the relative lateness of the objection, and particularly is this true in view of the fact that a nonspecific objection was made to a joint offer of evidence, part of which (the gun) was clearly admissible. The offer of proof, objection, and court ruling appear in the record as follows:

"Mr. Regan: At this time, the State would offer into evidence the two-page statement of the defendant taken by Detective Gilhooly at the Maxwell Street Police Station as People's Exhibit two for identification into evidence as People's Exhibit two; and People's Exhibit one, the .22 caliber pistol into evidence as People's Exhibit one.

Mr. Rosenfield: Objection, Judge, no proper foundation.

Court: Overruled. They may be received."

The offer of the .22 caliber pistol for admission into

evidence was perfectly valid because it was the weapon taken from the person of the defendant shortly after the shooting. Professor Wigmore has stated that "where the objection is to a question including *several facts* or to the *entire testimony* of a particular witness, and names a ground tenable for one part only, it is insufficient, the opponent must specify, not only his ground, but also the part of the offer to which the ground is applicable." (1 Wigmore on Evidence, 342-3, 3d ed. 1940.) This rule has been applied in Illinois to sustain the denial of a general motion for suppression of evidence parts of which were clearly competent (*People* v. *Exum,* 382 Ill. 204, 210; *People* v. *Reid,* 336 Ill. 421, 425; *People* v. *Selknes,* 309 Ill. 113, 119-20), and the ruling of the trial judge here was proper. In view of the time at which the objection of no proper foundation was made, and the defendant's failure to specify which part of the offer of proof was incompetent, we do not believe that it can fairly be said now that "the court and counsel for the State well knew that by this objection the defendant wanted a hearing out of the presence of the jury." *People* v. *Frugoli,* 334 Ill. 324, 334.

Our inspection of the briefs submitted to the appellate court and a careful reading of its opinion convince us that the defendant's contention that this case should be remanded for the limited purpose of conducting a judicial hearing to determine the admissibility of his written confession, is asserted for the first time here and was not raised in the appellate court. The failure of a party to present an alleged error to the appellate court precludes him from now asserting that ground for our consideration in all matters which are not jurisdictional. (*People* v. *Davis,* 318 Ill. 179, 182; *People* v. *Garwood,* 317 Ill. 578, 579-80; *People* v. *Walczak,* 315 Ill. 49, 57; see, also, *Williams* v. *Consumers Co.,* 352 Ill. 51, 59; *Tegtmeyer* v. *Tegtmeyer,* 348 Ill. 434, 440.) A related contention was raised and rejected in the appellate court, however, that the defendant's confession

was obtained under circumstances violative of his constitutional rights. The appellate court found that the objection of involuntariness was never claimed at the trial nor a motion to suppress ever made, and in view of the fact that Caldwell's written confession was taken within three hours of his arrest without the use of sustained questioning or any semblance of physical or mental coercion, we agree that the mere fact that he was handcuffed to a radiator apparently to prevent his possible escape from the police station interrogation room while the arresting officer attempted to learn the victim's version of events is insufficient to require remandment.

Aside from the question of permitting defendant's written confession to be taken into the jury room, we find no particular merit in the remaining allegations of error. In a discussion in chambers prior to closing arguments, defendant's attorney stated that he would prepare a manslaughter instruction for the record although the court indicated that he did not believe such an instruction was justified on the basis of the evidence he had heard, and the judge may reasonably have considered the failure of the defense to tender a manslaughter instruction as a decision to rely solely on its theory that the death of Mrs. Woods was accidental. We find therefore that the trial judge had no responsibility to give a manslaughter instruction on his own initiative when defense counsel failed to tender one. *People v. Taylor,* 36 Ill.2d 483, 489-91; *People v. Baker,* 8 Ill.2d 522, 524; *People v. Weisberg,* 396 Ill. 412, 421-2.

In imposing a 50-to-100-year sentence the trial judge commented that the defendant had killed Mrs. Woods in cold blood for no valid reason whatsover, and we find no mitigating circumstances in the record to detract from that conclusion. The defendant now urges that we exercise the discretionary authority granted us (Ill. Rev. Stat. 1965, chap. 38, par. 121—9(b)(4); now Rule 615(b)(4) of this court, 36 Ill.2d 182) to reduce the severity of the punish-

ment imposed. We have said, however, that the authority given reviewing courts to reduce sentences imposed by trial judges "should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals." (*People* v. *Taylor,* 33 Ill.2d 417, 424.) Having found that the penalty imposed is not clearly disproportionate to the crime committed, we will not disturb the defendant's sentence.

We come now to the defendant's contention, based on *People* v. *Spranger* (1924), 314 Ill. 602, 612, that his conviction must be reversed because the jury was permitted to take a copy of his written confession into the jury room for consideration in arriving at their verdict. *Spranger,* however, did *not* hold that it was reversible error to permit the defendant's confession to go to the jury room. It did hold a *combination* of erroneous rulings by the trial court including admission of a co-defendant's statement, the voluntary nature of which was not established, and which was in any event inadmissible against defendant whose own confession had been excluded because involuntary; erroneous evidentiary rulings; erroneous instructions; *and* permitting the jury to take the co-defendant's statement to the jury room, necessitated remandment. The *Spranger* court stated it to be error to permit a jury to take depositions and dying declarations with them to the jury room (*Rawson* v. *Curtiss,* 19 Ill. 456; *Dunn* v. *People,* 172 Ill. 582), and that "The same rule applies to confessions or other instruments of evidence depending for their value on the credibility of the maker." No authority is cited for the quoted statement. It was unnecessary to the decision for the confession had already been held inadmissible, and it is contrary to the rule prevailing in the majority of States

which have considered the question. Slim 4 to 3 majorities of the Georgia Supreme Court have twice ruled against sending written confessions into the jury room. (*Royals* v. *State,* 208 Ga. 78, 65 S.E.2d 158 (citing *Spranger*) ; *Walker* v. *State,* 215 Ga. 128, 109 S.E.2d 748.) We would agree, however, with the dissenting view that it is unfair to extend to written confessions the rules which exclude depositions and dying declarations from the jury conference room because "they bear scant, if any, similarity." (*Walker* v. *State,* 215 Ga. 128, 109 S.E.2d 927, 928.) Of the remaining States that have adopted the *Spranger* approach, two have held that it was harmless error to allow the jury to take a written confession with them during their deliberations (*State* v. *Lord,* 42 N. M. 638, 84 P.2d 80; *State* v. *Payne,* 199 Wis. 615, 227 N.W. 258) ; and another has equated a signed confession, portions of which were inadmissible, with a deposition. (*State* v. *Crighton,* 97 Mont. 387, 34 P.2d 511.) The majority of courts uphold the practice of sending written or tape-recorded confessions to the jury room and we believe this the better reasoned view. See *State* v. *Reyes,* 209 Ore. 595, 308 P.2d 182; *Wicklund* v. *State,* 119 Tex. Cr. 96, 44 S.W.2d 696; *Commonwealth* v. *Lammi,* 310 Mass. 59, 37 N.E.2d 250; *Nathan* v. *State,* 235 Ark. 704, 361 S.W.2d 637; *State* v. *Doty,* 94 Ohio St. 258, 113 N.E. 811; *State* v. *Castelli,* 92 Conn. 58, 101 Atl. 476; *State* v. *Hale* (Mo.), 371 S.W.2d 249; *State* v. *Gensmer,* 235 Minn. 72, 51 N.W.2d 680; *State* v. *Triplett,* 248 Iowa 339, 79 N.W.2d 391 ; *People* v. *Walker,* 150 Cal. App. 2d 594, 310 P.2d 110.

We think it significant that every criminal conviction in Illinois since 1924 wherein the taking of a written confession to the jury conference room was claimed as reversible error has been factually distinguished from *Spranger* on appeal and affirmed. In *People* v. *Dixon,* 75 Ill. App. 2d 77, *Spranger* was held inapplicable by the appellate court be-

cause there was no question of the voluntariness of Dixon's statement nor was there any co-defendant against whom the confession might be incompetent. We affirmed the result in *Dixon* holding that the defendant had waived any right to complain since his trial strategy clearly indicated his desire that the statement be taken into the jury room so that the jury might consider variances between the facts as stated in the confession and as testified to by the State's witnesses. (37 Ill.2d 416.) In other recent appellate decisions *Spranger* was held to be without binding effect where there was no question that the entire statement had been properly admitted into evidence (*People* v. *Diggs,* 81 Ill. App. 2d 361, 368-9); where the contents of the statement made by a confessed accomplice were also presented in his oral testimony during the trial (*People* v. *Somerville,* 71 Ill. App. 2d 381, 388-9); and where no question of the voluntary nature of the statement was in issue. (*People* v. *Bailey,* 76 Ill. App. 2d 310, 319-20.) In the case presently before us the appellate court held that like *Somerville, Dixon* and *Bailey* no prejudicial error resulted from sending Caldwell's confession to the jury room because his conviction did not depend upon his written or oral confessions but upon independent evidence establishing his guilt beyond a reasonable doubt. 79 Ill. App. 2d at 285-6.

We believe that avoidance of *Spranger* was due not so much to the factual difference between that case and those which followed, as it was to the unsound analogy in *Spranger* between written confessions which are admitted into evidence, and depositions and dying declarations. The reasons for excluding the latter two from the jury room are (1) that the statements of a deponent might be given undue emphasis beyond the scope of ordinary testimony if the jury were allowed to review such recorded statements during their deliberations, and (2) that dying declarations, which are admitted into evidence as a hearsay exception,

are not subject to cross-examination and should therefore be accorded no greater emphasis than present practices achieve. Nor have such persons been physically present at the trial where the jury would be able to observe them and evaluate the probative value of their testimony. Conversely, a signed confession which has been shown by the State to be free from coercive conditions is among the strongest kinds of physical evidence the prosecution may produce, and when the tests of admissibility have been met and the defense afforded the full opportunity to point out any circumstances which may go to undermine the credibility of the confession in the eyes of the jury, there appears to us no valid reason to preclude the written confession from going to the jury room along with other exhibits which the trial judge may deem proper. Particularly is this true now that the *Escobedo* (378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758) and *Miranda* (384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) rules afford additional safeguards against the possibility of coerced confessions coming before a jury. Nor, in our opinion, is there a logical reason to distinguish between a written confession and other physical evidence of a concededly damaging nature such as murder weapons, bloodstained clothing or gruesome photographs insofar as their presence in the jury room is concerned. In our judgment all should be governed by the general rule governing exhibits of physical evidence which may be taken to the jury room if the sound discretion of the trial judge dictates that they bear directly on the charge. In the absence of an abuse of that discretion to the prejudice of defendant, its exercise will not be disturbed on appeal. *People* v. *Allen*, 17 Ill.2d 55, 62-3; *People* v. *Ciucci*, 8 Ill.2d 619, 625.

We accordingly hold it was not error to permit defendant's written confession to be taken to the jury room. To the extent that *Spranger* may be thought to indicate otherwise it is overruled.

The judgment of the Cook County circuit court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.