THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARIO TRIPKOVICH, Defendant-Appellant.

(No. 54997; ▮▮▮▮▮▮▮

First District—May 23, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Zenon Forowycz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

Defendant was indicted on charges of murder and burglary. On a trial by jury he was found guilty of both charges and sentenced to serve concurrent terms in the State Penitentiary of 30 to 60 years for murder and five to ten years for burglary. On appeal he contends:

1) the burglary indictment was at variance with the proof adduced at trial;

2) the alleged confession used against him was obtained without his being advised of his constitutional rights; and

3) the trial court wrongfully refused to conduct a hearing on the voluntariness of his confession, thus violating defendant's constitutional right to the exclusion of evidence obtained unlawfully.

The facts follow.

At approximately 4:30 A.M., on August 14, 1969, Harold Nixon, supervisor of Waveland Golf Course, saw the defendant in Cafe Brauer, a restaurant located near the golf course. When Nixon looked through a window and saw the defendant prying open drawers in the restaurant he realized a burglary was being attempted and called the police. Detective Donald Pike and Officer Patrick Rodgers responded to the call, arriving shortly thereafter, while defendant was still in the restaurant.

At the trial Harold Nixon testified to the above facts, stating that when he followed the two police officers into the restaurant he saw the body of the night watchman, Richard Densmore, lying on a couch directly between the police and the defendant. He stated that he heard Detective Pike ask the defendant why he did it and defendant replied that he didn't mean to do it. The defendant did not object to this question, but an objection was made in the course of the trial and will be discussed later.

The State then presented three other witnesses. After their testimony the State called Detective Pike, then the court called a five-minute recess. When court reconvened defense counsel made an oral motion to suppress defendant's confession. The State objected on the ground of untimeliness. Defense counsel advised the court that a pre-trial motion to suppress had not been made because the defendant totally denied having made any statement whatsoever. Defense counsel also told the court that he had not been informed that the alleged statement would be placed in evidence prior to the testimony of Detective Pike. As a result, when the statement was introduced earlier he was caught by surprise and, rather than disrupt the trial, he decided to wait to see if the State called Detec-

tive Pike. Defense counsel further told the court that in the list of witnesses provided by the State, only Pike was listed as witness to an oral statement made by defendant, and that he was surprised when the State's witness, Nixon, also testified to an oral confession. The State then moved to amend its list of witnesses to include Nixon and Officers Samuel Greiner and Rodgers as witnesses to the alleged oral confession. The trial court permitted the State to so amend its list of witnesses but denied defendant a hearing as to the lawfulness of the alleged confession.

Detective Pike then took the witness stand and testified that when he arrived at the Waveland Golf Course in response to the radio message he was met by Nixon who told him what was happening. He further testified that he and Officer Rodgers, followed by Nixon, went into the restaurant and saw the defendant at the rear of the building with two bags in his hands. Pike told the defendant to stop, put up his hands and come forward. Pike testified that the night watchman was lying on a cot directly between him and the defendant; that there was blood around his head; that he asked the defendant, "What happened to him?" and the defendant replied that the night watchman woke up and he had to hit him. Pike stated that he then placed the defendant in custody and examined the premises and found that the defendant was the only person in the building. His investigation also revealed a long pipe directly at the back of the deceased's head, which the testimony reveals was available to defendant as the murder weapon. Pike testified that he was present during subsequent questioning of the defendant.

Officer Patrick Rodgers testified that on the morning in question he received a radio call that a burglary was in progress at the Waveland Golf Course restaurant. He arrived there just behind Detective Pike, and as they entered the building they saw the deceased lying on a cot and saw the defendant in the rear of the building; that the defendant came forward when Pike ordered him to do so, and as he passed the body of the deceased night watchman Pike asked "What happened to him?" and the defendant replied, "He started to wake up and I hit him." The officer stated that after being questioned the defendant was ordered to lie down on the floor, and after being searched the defendant was handcuffed to the railing in front of a counter.

Detective Greiner testified that he arrived at the scene of the crime between 5:00 and 5:30 A.M., and talked with Pike and Rodgers. When he went into the restaurant he saw the deceased lying on a cot with blood all over the upper part of his body, and his forehead was crushed. He identified himself to the defendant and advised him of his constitutional rights, which defendant said he understood. Greiner then asked the de-

fendant if he killed the night watchman, and he said, "He woke up and I hit him. I didn't mean to do it." Greiner asked the defendant if he used the pipe which was lying near the deceased, and he said he did. Greiner testified further that defendant was taken to Area 6 Police Station, Homicide, after which Greiner requested the State's Attorney's office to send an assistant to the station to take a written statement from defendant. The defendant, however, refused to make such a written statement.

Defendant testified that he worked at a hot-dog stand; that on the morning of August 14, 1969, when he finished work at 2:45, he was not tired, so he rode his bicycle "around"; that while riding he met one Johnny whom he had known "from the past." He further testified that Johnny suggested they break into the restaurant at the Waveland Golf Course because there was money in the building. Defendant testified that he refused, but through persuasive argument Johnny convinced him to help burglarize the restaurant. He said that Johnny told him to go into the basement; that when he heard voices he came back upstairs and saw Detective Pike who ordered him to put up his hands and come forward. He further testified that the police officers threw him to the ground, searched him, then flipped him over on his back; that Detective Pike put his foot on his stomach and his gun on his chest and said, "Talk, you dirty m—f, say you did it." Defendant testified that he thought Pike was referring to breaking into the restaurant, and he said, "I did it." He testified that he was then handcuffed against a counter and could see into the room only by looking over his shoulder. He testified that he never saw the body of the deceased; that he was advised of his rights after he was taken to the Damen Avenue Police Station; and that after becoming aware of those rights he refused to make a written statement and his alleged oral confession was never reduced to writing. We proceed to a consideration of defendant's first contention, that the indictment was at variance with the proof adduced a trial.

❂ 1 The burglary indictment against defendant alleged that he intended to commit the crime of theft at the "Restaurant of Paul Hecker and Agness N. Whiteman, co-partners, doing business as Cafe Brauer Corporation, a corporation." At trial, co-partner Hecker testified that his co-owner's name was actually Agnes N. Whitehead and that the business was that of a partnership rather than a corporation. Defendant contends that this variance between the indictment and the proof at trial was fatal to the State's case. In a burglary charge it is not necessary to prove ownership of or precise legal title in the burglarized premises. Rather, it is sufficient to plead and prove that the named party had possession and

control of the premises, which is rightful as against the burglar. *People v. Whittaker*, 45 Ill.2d 491.

■■ The functions of the material allegations of a burglary indictment are to show that the premises burglarized were not the property of the defendant; to enable the accused to prepare for trial; and to plead acquittal or conviction in bar of a subsequent prosecution for the same offense. (*People v. Harden*, 42 Ill.2d 301.) If these functions of allegation and proof have been realized, the conviction should not be reversed. (*People v. Harden, supra.*) In the instant case the restaurant was not the property of the defendant, who admitted he entered a place in which he had no right to be. The premises were adequately identified in the indictment and by the evidence. The defendant was amply protected against any subsequent prosecution for the burglary of the Cafe Brauer Restaurant at Waveland. The conviction for burglary should not be reversed for a harmless variance between indictment and proof.

Defendant next contends that the trial court wrongfully refused to conduct a hearing on the voluntariness of his alleged confession and thereby violated his constitutional right to the exclusion of evidence obtained unlawfully. Nixon, the State's witness, testified to an alleged confession by defendant. After three other witnesses testified, defense counsel moved to suppress the confession. The State objected on the ground that the motion was not timely since the jury had already heard the testimony relating to the oral statement and on the further ground that defendant had notice of the oral statement prior to trial. Therefore, he should have made his motion before the trial commenced. The court denied defendant's motion.

■■ An initial judicial determination of the voluntariness of a defendant's confession must be made by the trial judge outside the presence of the jury when objection is made to its admission. (*Jackson v. Denno* (1964), 378 U.S. 368; *People v. Fox*, 319 Ill. 606.) It is improper to submit the issue of voluntariness to the jury because such a procedure neither affords a reliable determination of the voluntariness issue nor adequately protects a defendant's right to be free of a conviction based on a coerced confession. (*Jackson v. Denno, supra.*) A confession may be challenged by preliminary hearing on a motion to suppress or by appropriaate objection thereto at trial. (*People v. Caldwell*, 39 Ill.2d 346; *People v. Taylor*, 33 Ill.2d 417.) Failure to pursue one of these procedures ordinarily precludes consideration of the matter on appeal, but when a defense objection to a confession is made in apt time, the confession is not admissible in evidence until the trial judge has determined its voluntariness at a hearing outside the presence of the jury. (*People*

*v. Caldwell, supra.*) Since it has been determined that defendant was entitled to a hearing on the voluntariness of the alleged confession if proper procedure was followed, the question is then reduced to whether the trial court properly denied defendant's motion for lack of timeliness.

■■ The State's objection to defendant's motion for a voluntariness hearing was in part based on the fact that defendant was aware of the oral statement he had made prior to trial, and counsel should have presented his motion to suppress the statement before trial. Defense counsel cannot be faulted for not moving in the pre-trial stages to suppress the alleged confession. He had, earlier in the proceedings, moved for production and copy of any alleged oral statement made by defendant. In response to that motion the State had told counsel that only Detective Pike would testify to the statement, and counsel was not provided with a copy. The State did not disclose to defense counsel that the statement amounted to a confession by defendant who allegedly told police that he committed the crime. Since defense counsel did not know that the "statement" the State planned to use at trial was actually a confession, he cannot be held to have waived the right to move to suppress the confession because he did not do so prior to trial. The fact that counsel failed, prior to trial, to request a hearing on the voluntariness of the confession does not constitute a waiver of his right to such a determination. *People v. Strader,* 38 Ill.2d 93; *People v. Caldwell,* 39 Ill.2d 346.

The State's objection to defendant's motion for a voluntariness hearing was also based on the fact that the motion was made after the jury had already heard the witness Nixon's testimony in reference to the oral statement before counsel requested the hearing. Nixon was the second witness to testify for the State. He testified that defendant, when asked by Detective Pike, "Why did you do it?" replied, "I didn't mean to do it." Defense counsel did not at that time object to the testimony nor move for a hearing on the voluntariness of the statement. Counsel did move for such a hearing when the State called Detective Pike, the only witness to testify to the oral statement in accordance with the witness list furnished defense by the State. In support of his motion for the hearing, counsel stated that he was not informed that the alleged statement would be introduced in evidence prior to Pike's testimony and that when the statement was introduced earlier he was caught by surprise. He then decided that rather than disrupt the trial and draw the jury's attention to it, he would wait and see if the State called Detective Pike. The court denied the motion and permitted the State to amend its list of witnesses to include Nixon and Officers Greiner and Rodgers as witnesses to the oral statement, thus giving it an added importance not evident before trial.

██ Where an accused fails to object to the introduction in evidence of an admission or confession, its reception into evidence without preliminary proof of voluntariness is proper and not open to review. (*People v. Blumenshine,* 42 Ill.2d 508; *People v. Sims,* 32 Ill.2d 591; *People v. Hicks,* 44 Ill.2d 550.) In *Hicks,* defendant filed a motion to suppress his admissions prior to trial and requested the court that the motion be heard jointly with the trial. At trial, when the testimony of defendant's admissions was introduced, defense counsel neither objected to the testimony nor requested a preliminary hearing on the issue of voluntariness, and the court held that the testimony was properly admitted in evidence.

██ In the instant case, defense counsel did not object to the defendant's confession when it was first testified to, but he did object at a later point in the trial. The failure to object to the confession when it was first introduced does not bar an objection subsequently made. (*People v. Caldwell, supra.*) In the case before us, defense counsel was not notified before trial that an oral confession would be introduced, nor was he notified that a civilian witness would testify to the oral statement. Counsel was told that only one police officer would testify to the statement. During the trial, defense counsel did not object to the confession when it was first mentioned by Nixon, but did raise that objection later, during the State's case in chief and before the questioning of Detective Pike. Under these circumstances the court should have held a hearing on the voluntariness of the confession. The failure to do so was error, and we order that the judgment of conviction of murder be vacated, pending a hearing in the trial court on the voluntariness of the confession.

██ Defendant contends that the alleged confession used against him was obtained without his being advised of his constitutional rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436. There exists a factual question with respect to the circumstances of the confession and how it was elicited. This will be determined at the hearing on the voluntariness of the confession.

██ At that hearing the court will, we assume, hear the testimony of the State's witnesses Pike, Rodgers and Nixon, and the testimony of the defendant as to the facts concerning the confession. If the testimony of the witnesses should be the same as before; namely, that Pike asked defendant a single question, "What happened?" and defendant replied, "I did it," and the court determines that the confession was voluntary, then it was not necessary to have given defendant the *Miranda* warnings before questioning him. General questioning on the scene as to facts surrounding a crime or such questioning of citizens in the fact-finding process are unaffected by the holding in *Miranda.* A defendant's response to a single question, such as "what happened?" is not the product of a

46

custodial interrogation requiring the *Miranda* warnings. *People v. Paton* (1967), 255 Cal.App.2d 347, 62 Cal.Rptr. 865; *State v. Meadows* (N.C. 1968), 158 S.E.2d 638; *Bell v. State* (Texas 1969), 442 S.W.2d 716; *Commonwealth v. Lopinson* (Pa. 1967), 234 A.2d 552; *Ballard v. State* (Tenn. 1969), 454 S.W.2d 193.

■■ If the court finds that defendant's confession was voluntary and that it came in response to the single question asked by Pike which did not have to be preceded by *Miranda* warnings, the judgment of guilty of murder should be reinstated against the defendant. If, however, the court finds the confession involuntary, it should order a new trial on the charge of murder.

The judgment of the Circuit Court of Cook County is vacated and the cause remanded to the Circuit Court for further proceedings in accordance with the views expressed herein.

Vacated and remanded, with directions.

STAMOS, P. J., and LEIGHTON, J., concur.