Syllabus.

# THE STATE OF OHIO v. DOTY.

*Criminal law — Aider and abettor — Indicted as principal for murder — Prosecution based on conspiracy — Knowledge of acts of principal immaterial, when — Charge to jury — Conspirators guilty with principal — Although latter's acts not contemplated — And conspirators absent and without knowledge — Evidence — Admissibility of confession detailing flight after crime — Confession to be sent to jury room, when — Evidence of threats and possession of weapons, inadmissible, when — Competency of evidence of payment of money by confederate.*

1. Where the state has indicted a defendant as a principal offender for murder in the first degree, but on the trial prosecutes him only as an aider and abettor and lodges its entire case upon proof of a conspiracy to commit an unlawful act by the use of deadly weapons or force and violence of such character as would reasonably be expected to cause the death of another, it is error to charge the jury that if it finds that the shot was fired by the principal offender without the knowledge, connivance or assent of the defendant the jury must acquit.

2. Where only such unlawful act was contemplated in the original conspiracy, although not identical with or similar to the criminal act charged, if the conspired unlawful act and the manner of its performance would be reasonably likely to produce death, each conspirator is equally guilty with the principal offender, as an aider and abettor in the homicide, although such aider and abettor was neither present nor had knowledge of the physical killing or of the weapon used.

3. Where a signed confession details the defendant's connection with the crime charged and also contains an account of flight shortly following the crime and the actions of himself and one or more of his confederates, the entire confession is competent and relevant; but if improper or irrelevant statements are incorporated therein they may be excluded by the court.

4. The parties in a criminal case have no legal right to demand that a signed confession be sent to the jury upon their retirement. When the same contains no irrelevant and prejudicial statements the trial court, in its discretion, may send such a confession to the jury room.

5. Where on the trial the testimony discloses that the defendant was the aggressor and the person assaulted was within the

peace of the state, and no testimony has been offered tending to support a plea of self-defense, it is error to admit testimony of threats made and weapons reported in the possession of others than the deceased, and especially is this so when the decedent has not been connected with the threats made or with the possession of such weapons.

6. When a conspiracy has been established *prima facie,* the testimony of a confederate, tending to prove that the defendant paid him money the day after the homicide for services in connection therewith, is competent.

(No. 15211 — Decided May 18, 1916.)

EXCEPTIONS by the Prosecuting Attorney to the Decision of the Court of Common Pleas of. Hamilton county.

The indictment in this case was one which charged one Gabriel Sullivan, the defendant Herbert Doty, and three others, jointly as principals, with murder in the first degree in causing the death of one James Shall by the use and discharge of a pistol. The defendant Doty was tried separately.

Gabriel Sullivan, the actual user of the pistol, had pleaded guilty to murder, and the court, previous to the trial of this case, having fixed the degree of his crime at second degree murder, he was confined in the Ohio penitentiary, but returned and testified as a witness for the state. On the trial of Doty the state offered testimony tending to prove that on Thursday, the 9th day of December, 1915, Herbert Doty and the other four indicted men met at a saloon a short distance from the Christ Hospital in Cincinnati and formed an agreement to go to the hospital and assault certain workmen who were engaged as painters at that

place, and by the use of violence compel them from pursuing their work; that pursuant to this common purpose the five men, including this defendant, entered the hospital, Sullivan armed with a pistol, the defendant Doty with a blackjack, and one of the others with an iron bar. Having entered the building they proceeded to attack the painters at work, Doty assaulting one with the blackjack and Sullivan shooting Shall, causing his death. These assaults occurred in different rooms of the hospital. The defendant Doty was not present, nor did he actually know of Sullivan's possession of the pistol or of its use in the killing of Shall. The time of the assault occupied about three minutes. Following the assaults the defendants again met in a saloon and placed the pistol and blackjack in the possession of the barkeeper for temporary safe-keeping. That night the men left for Dayton, Ohio, where they separated, Doty and Perry leaving for Eaton, Ohio, where they were arrested on the following Sunday night.

On the following Monday Doty made a confession in the presence of sundry witnesses, which was transcribed by one Kilgarriff and signed by Doty. This confession purported to detail the conduct and connection of Doty with the offense in Cincinnati, and also included a somewhat voluminous statement of what took place after the flight to Dayton. As to what transpired in Cincinnati the trial court permitted the confession to be offered, but held incompetent that portion of the confession which purported to relate to Doty's conduct and action after he reached Dayton. The

part of the confession excluded by the court related what occurred after reaching Dayton—that Doty suggested the best thing they could do was to split up and "get in the clear some place and stick around until night;" that he telephoned to Cincinnati for money and received $25 from some one whom he did not know; that they frequented saloons in Dayton and Eaton until his arrest at the latter place, and that he gave one of his associates, Perry, $15 of the money received.

*Mr. John V. Campbell,* prosecuting attorney, and *Mr. Charles H. Elston,* assistant prosecuting attorney, for the exceptions.

*Mr. A. C. Fricke* and *Mr. Thomas J. Cogan,* against the exceptions.

JONES, J. Although Herbert Doty and his associate defendants were indicted as principals, under such an indictment by virtue of Section 12380, General Code, either of the defendants could be prosecuted and punished as if he were the principal offender. Although charged as principal in the indictment, Doty was in fact prosecuted, under the conceded facts in this case, as an aider and abettor. The entire case of the state was prosecuted upon the theory that although the death of Shall was actually caused by a pistol shot fired by Sullivan, Doty and his associates had conspired with Sullivan in a common purpose to commit an unlawful act of such character as might naturally or probably result in the crime committed. On the

trial of the case the court in its general charge said
to the jury that it was not claimed that there was
any testimony tending to show that Doty committed
the manual act of discharging the pistol or that he
even knew that Sullivan had the weapon in his pos-
session.    Likewise, in his statement to the jury,
the prosecutor definitely stated that the state did
not claim that Doty had the revolver or that he
shot Shall, and neither did it claim that Doty knew
that Sullivan had the revolver in his possession.

The case therefore assumed an aspect in which
the state placed its entire reliance upon the convic-
tion of the defendant as an aider and abettor, and
endeavored to prove the offense charged by show-
ing that the murder resulted from the conspiracy
formed by the defendants jointly to commit an un-
lawful and violent assault upon the workmen at
the Christ Hospital, of whom Shall was one.    In
this situation it became the duty of the court to
advise the jury, in no uncertain terms, as to the
effect of a conspiracy, so charged, resulting in the
death of Shall, although in fact Doty may not have
been the principal offender causing directly the
death of Shall and although he may not even have
known of or connived at the criminal act of firing
the pistol.

A number of special charges were asked to be
given the jury by the defendant and by the state.
The court gave, among others, the following at the
request of the defendant:    "The court charges the
jury that if they believe, from the evidence, that
the shot which took the life of Shall, was fired by
Sullivan, and without the knowledge, connivance

or assent of this defendant, then the jury must find this defendant not guilty."

This charge was vitally erroneous. It required the jury to find the defendant not guilty in case the *firing of the shot* by Sullivan was not connived at or assented to by the defendant. This error was further accentuated by the court in the general charge when it said that in order to warrant or justify the jury in finding the defendant Doty guilty of murder in the first degree they must find "that the accused, Herbert Doty, shot the deceased on or about the time and place alleged in said indictment," and "that the accused Herbert Doty did the shooting purposely and with deliberate and premeditated malice." 21 Cyc., 1062.

Aside from the fact that there was no claim or reliance upon the part of the state that Doty actually fired the shot, the vice in that part of the general charge is that it required an acquittal even though there may have been in the alleged conspiracy a common design and purpose upon the part of the joint conspirators to kill the persons assaulted.

If Doty conspired with Sullivan in a deliberate and premeditated purpose to kill, he would be guilty of murder in the first degree, although he did not in fact fire the shot. And if Doty engaged in a conspiracy or common design, having for its purpose the use of deadly weapons or force and violence upon the workmen at Christ Hospital, and the crime committed was the natural and probable consequence of the execution of such common design, or was undertaken under such circumstances

as would probably endanger human life, then Doty, under our statute, would be equally guilty with Sullivan who actually fired the shot, although Doty neither knew of nor connived at the shot. As stated in the opinion in *Goins* v. *State,* 46 Ohio St., 457, there are many authorities which attach equal criminal responsibility if the killing was done in advancing the unlawful common design.

This feature of the criminal law is founded upon the basic principle that persons engaged in an unlawful enterprise are presumed to acquiesce in whatever may be reasonably necessary to accomplish the object of the conspiracy; and if, under the circumstances, it might be reasonably expected that life might be endangered by the manner or means of performing the unlawful criminal act conspired, each is bound by the consequences naturally or probably arising in its furtherance, and in case of death would be guilty of homicide. *Lamb* v. *People,* 96 Ill., 73; *Peden* v. *State,* 61 Miss., 267; *Williams et al.* v. *State,* 81 Ala., 1, 5; *State* v. *Darling,* 216 Mo., 450, and *People* v. *Gukouski,* 250 Ill., 231.

The general charge, and special charge No. 1 given at the request of the state, embodied proper instructions as to the criminal responsibility of the conspirators if established by the required proof, and these instructions were quite as favorable to the defendant as he could expect. But when the court later charged that before the defendant Doty could be found guilty of murder in the first degree the proof must establish that he shot the deceased with deliberate and premeditated malice,

the charge was entirely misleading, unless the jury were also advised in that connection that guilt might result from such conspiracy as already outlined; and especially is this true in view of the aspect the trial assumed, the state having lodged its case solely upon the charge of aiding and abetting the crime.

Among other special charges asked for by the state the following charge was refused:

"No. 15.  I charge you that a conspiracy is sufficiently shown if it is made to appear that the defendant and his associates had a common purpose to commit an unlawful act, though that unlawful act was quite dissimilar from the crime in fact committed, if the latter crime was one that might have been contemplated, reasonably, as likely to result from the attempt to commit the act intended."

The evident purpose of this charge was to bring before the minds of the jury, succinctly, the criminal rule that where the conspiracy in its origin may have intended the commission of an unlawful act of violence, although not identical with or similar to the criminal act charged, still if that common purpose resulted in the killing, and if the manner of performance of the criminal act conspired could have been reasonably contemplated as likely to produce death, in that event the coconspirators are equally criminally guilty with the principal.  This charge is substantially supported by the cases of *Goins* v. *State,* 46 Ohio St., 457, and *Stephens* v. *State,* 42 Ohio St., 150.

That part of the confession of the defendant, introduced through the medium of the witness Kilgarriff, which related to the conduct and statements of the defendant after he reached Dayton and Eaton, was ruled out by the trial court as incompetent. Viewing that part of the confession excluded it is somewhat difficult to understand why the trial court ruled it out. It is true that a small portion of the same may have been immaterial, but the whole was relevant. The excluded portion tended to prove, not only that the flight to Dayton and Eaton, Ohio, was undertaken because of connection with the crime charged, but also that a consciousness of guilt upon the part of the defendant existed. It furthermore tended to show united action upon the part of Doty, Sullivan and the others, establishing the fact of a conspiracy. The excluded part of the confession in its entirety should have been admitted by the court. *State* v. *Knapp*, 70 Ohio St., 380, and 2 Wharton on Criminal Evidence (10 ed.), Section 622*j*.

It developed on the trial that the state asked the court to send the signed confession of the defendant to the jury room, which request was refused. The state had no legal right to demand that this paper be sent to the jury upon their retirement. The only provision of our code upon the subject requires that written charges and instructions shall be given to the jury upon their retirement. This feature of procedure, relating to the signed confession, rests entirely within the wise discretion of the court, and in the exercise of such discretion the court may send a paper of this character into

the jury room if the same contains no irrelevant and prejudicial statements.

Likewise it was within the discretion of the court to exclude the jury during the argument of counsel. If it develops on the trial that counsel in the course of his argument touching the admission of testimony is making statements calculated to prejudice the jury, it becomes the duty of the court to exclude the jury.

Complaint is made by the state that the court refused to give other special charges requested by it, but an inspection of the record discloses that the court in other parts of its instructions to the jury, both general and special, substantially covered the requests refused.

The court excluded testimony by the witness Sullivan tending to show that on the day after the homicide, at Dayton, Doty paid him the sum of three dollars, by way of expense money for services in connection with the homicide, and that Doty made efforts to secure money for the use of himself and associates. This was not merely a narration of a past transaction, but was the statement of a substantive act on the part of Doty, viz., the payment to Sullivan of money in connection with the homicidal act and efforts by Doty to secure money in aid of the continuation of their flight; and although occurring after the homicide it was competent.

A great mass of the testimony adduced at the trial was wholly irrelevant. Such was the character of the testimony given by the witness Siekmann, especially that relating to the transac-

tion at the Bloom school, which was entirely dis-
connected from the case on trial. This testimony
was admitted upon the statement of counsel that
a proper connection would be made later, but this
was not done. This evidence related to reports
made from time to time that certain employed
workmen in the city were armed, and the claim of
competency was made under the rule announced
in the *Goins case, supra,* but that case does not
apply to the facts here. It is difficult to see how
the question of self-defense arises in this case,
since the testimony disclosed that the defendant
was the aggressor and Shall was within the peace
of the state. The testimony of Lyons relating to
Britt, much of it hearsay, was likewise incom-
petent, inasmuch as this evidence did not tend to
prove that the decedent was armed and that a
communication of that fact was made to the de-
fendant. If the defendant Doty relied upon self-
defense it was of such a character as required him
to stand in the shoes of Sullivan who committed
the manual act of killing Shall, and if Sullivan
himself, as one of the aggressors in the case, could
not claim the benefit of the plea it was manifestly
erroneous to permit this class of testimony to be
offered, especially so when the testimony disclosed
that the threats made were made by, and the
weapons testified to were in the possession of,
others than the deceased, he not having been con-
nected with them in any wise.

Since the state itself offered testimony tending
to prove that money was paid to Sullivan and Doty
by a Cincinnati organization, testimony controvert-

ing that fact was competent by way of impeachment.

For the reasons stated in this opinion the exceptions here noted to the ruling of the trial court are sustained.

*Exceptions sustained.*

NICHOLS, C. J., JOHNSON, DONAHUE, WANAMAKER, NEWMAN and MATTHIAS, JJ., concur.