Wanamaker, J.
The definition of manslaughter in Ohio is substantially the old common-law definition as given in 4 Blackstone’s Commentaries, 191:
“The unlawful killing of another without malice either expressed or implied: which may be either voluntarily, upon a sudden heat; or involuntarily, but in the commission of some unlawful act.”
In Johnson v. State, 66 Ohio St., 59, these same elements of manslaughter are accepted and approved in the following language, at page 63:
“Therefore, to convict of manslaughter, it is incumbent upon the state to establish that the killing was done ‘either upon a sudden quarrel, or, unintentionally while the slayer was (is) in the commission of some unlawful act.’ ” This same doctrine is announced and approved in Bandy v. State, 102 Ohio St., 384.
It is conceded here that there was no “sudden quarrel,” that the killing was unintentional or inadvertent ; but it is claimed that it was done “in the commission of some unlawful act.”
The state contends that the unlawful act in which the plaintiffs in error were engaged at the time of the killing, and which proximately caused the killing, was the violation of Section 12635, General Code, which so far as pertinent reads as follows:
“Whoever runs a horse, .or shoots or fires a gun or pistol at a target within the limits of a municipal corporation, shall be fined,” etc.
This is an old statute. It must be conceded that upon the record somebody was then violating that statute by shooting at a target within the limits of *437 the municipal corporation of the city of Akron, in Summit county, Ohio.
It is contended, however, by the plaintiffs in error, that by reason of the fact that the record does not show beyond a reasonable doubt which one of the different persons fired the fatal shot, neither of the defendants can be convicted, because in involuntary manslaughter of this character they claim there is neither aider nor abettor.
What authority there is for this contention we are unable to conjecture. There is no principle of law that seems to warrant such a contention, and no cases cited in which any such principle has been recognized. All those who had a common purpose to participate in the shooting at that target at the time in question, and did so actually participate, are equally guilty of the commission of the unlawful act, to-wit, the violation of the statute; and each in law must be held to have contemplated or anticipated the natural and probable results that would follow from the hitting or the missing of the target.
This would seem to have been particularly charged upon the peace officers of the city, who were then on duty, engaged in the protection of the people of the municipality, their lives, limbs, and property, from violence or other injury contrary to law.
As to Section 12635, it is fundamental that all are principals in the commission of a misdemeanor. But the charge here is not a misdemeanor, but a felony, manslaughter, and as a basis of manslaughter the unlawful act in which the plaintiffs in error were then and there engaged, and if such unlawful *438 act was a proximate cause of the unlawful killing of David Gerber, which crime could reasonably have been anticipated or contemplated as likely to result from the acts of the plaintiffs in error, then the jury would be abundantly warranted under the record in finding the plaintiffs in error guilty as charged.
One of the fundamental principles of government as announced in the Declaration of Independence is:
“To secure these rights [the unalienable rights of man; among which are life, liberty and the pursuit of happiness], Governments are instituted among Men.”
The" legislature, doubtless from the desire to protect the numerous public in our municipalities, where the discharge of deadly weapons would be particularly dangerous, deemed it wise to enact the above section.
It is urged, however, that by reason of the very fact that the statute clearly applies only to municipal corporations it is a law of a general nature, but that it'is not of uniform operation throughout the state, and therefore is repugnant to the constitution.
There are, however, many criminal statutes enacted solely with reference to persons and conduct within the limits of municipalities, and indeed often for several miles beyond the municipal limits, and they are designed for the protection of the congested populations in and near to municipalities, and would have little or no application in the sparsely *439 settled districts of the country. The mere fact that such acts are made criminal only in or near municipalities has never been regarded by our courts as furnishing a ground for avoiding or nullifying the statutes. Of necessity there are acts and conduct in our municipalities that exceedingly offend against good morals, public health, safety, and welfare, that would be perfectly harmless and innocent in the rural districts; and legislatures have frequently and in various ways recognized this basic distinction. This is particularly true in the using and handling of deadly weapons, or any mechanical agencies used or operated in a deadly manner, or in any manner reasonably calculated to disturb the peace and safety of society. The operation of guns, the operation of automobiles, and the like, are familiar instances of such use in the thickly-populated districts, our municipalities.
There are two Ohio cases that have dealt somewhat with this principle of numbers engaged in the commission of an unlawful act. In the case of Goins v. State, 46 Ohio St., 457, Judge Bradbury, in his very able opinion carefully reviewing the law applicable to groups of persons engaged in the commission of wrongful and unlawful acts, gives the following as the result of his research, at page 467:
“The authorities are conclusive that the conspiracy is sufficiently shown when it is made to appear that the common purpose was to commit an unlawful act quite dissimilar from the crime in fact committed, if the latter crime was one that might have been contemplated,' reasonably, as likely *440 to result from the attempt to commit the act intended.”
This is simply an old proposition, that where men combine either by express agreement or by actual conduct in the commission of an unlawful act, that is, an act made unlawful by statute, then each and all of those so participating are held liable for any and all of the proximate results that could naturally and reasonably be anticipated, that is the results clearly caused by the unlawful act, such as reasonably prudent men would be held in law to have anticipated.
Now, the shooting at a target within the municipality is exactly what the general assembly regarded as being likely, if permitted, to result in injury or death to the innocent public, who would be present, passing as a traveling public in and about the city’s streets and alleys'or other public places, or indeed upon their own premises near where the shooting occurred. In either event the public peace would be naturally endangered and personal security jeopardized by such conduct, although there was no direct, definite purpose on the part of any of the participants to injure any particular person.
It is the assault, the attack, and the jeopardy to the public peace and order that is assailed by the shooting at a target, and that is just what happened in these cases, and it is the very thing which the statute denounces as unlawful. The plaintiffs in error contend that they are entitled to an acquittal by reason of the reasonable doubt that must'exist from the whole record that they or either of them fired the fatal shot. If this were the law, then in *441 order to commit a crime all that would be .necessary would be a plurality of persons, each- firing his own gun, the same size bullets, from which it would be impossible to determine as to which person fired the fatal shot, and then a reasonable doubt would exist as to the identity of the particular person who physically killed, and conviction would be impossible; but in such case the act of each while engaged in the unlawful act becomes the act of all, — not merély as to that unlawful act* but as to all the proximate results that naturally and logically follow therefrom.
This same doctrine is also announced and adhered to in State v. Doty, 94 Ohio St., 258. In the opinion by Judge Jones, at page 264, the following is announced as elemental in criminal law, where a number of parties are engaged in any unlawful enterprise:
“This feature of the criminal law [referring to Goins v. State, 46 Ohio St., 457] is founded upon the basic principle that persons engaged in an unlawful enterprise are presumed to acquiesce in whatever may be reasonably necessary to accomplish the object of the conspiracy; and if, under the circumstances, it might be reasonably expected that life might be endangered by the manner or means of performing The unlawful criminal act conspired, each is bound by the consequences naturally or probably arising in its furtherance, and in case of death would be guilty of homicide.” (See cases cited.)
The principle is so elementary and so frequently cited that it is unnecessary to burden the record with other cases.
*442 Something has been said in one of these cases about the right of/Green, who probably also fired one of the bullets, to defend his *own property, of which he was a lawful heir, and therefore could not be guilty, and that he not being guilty his aiders, abettors or associates could not be guilty.
Suffice it to say that in this case there is no question of the defense of person or property involved, and it is therefore quite unnecessary to consider such a technical academic objection.
Other errors are assigned in the record, but we feel they are not worthy of serious comment. The administration .of justice, particularly in criminal cases, must neither be prevented nor delayed by mere technical or academic distinctions, that do not clearly affect the substantial merits of the case.
These officers of the law were engaged in an unlawful act, committing a breach of the peace, which peace it was their primal duty to preserve. From that breach of the peace by them, their aiders and abettors, an unlawful killing naturally and proximately resulted. This is abundantly sustained by the record, and admits of no doubt.
The verdict of the jury is abundantly supported by the evidence, and the judgments of the court's below sustaining the same should be upheld.

Judgments affirmed,.

Marshall, C. J., Hough and Jones, JJ., concur.