## DORGER et v STATE

Ohio Appeals, 1st Dist, Hamilton Co

Decided July 6, 1931

Mr. Froome Morris, Mr. M. Froome Barbour and Mr. A. B. Benedict, Cincinnati, for plaintiffs in error.

Mr. Robert N. Gorman, Prosecuting Attorney, Mr. Louis J. Schneider and Mr. Dudley M. Outcalt, Cincinnati, for defendant in error.

RICHARDS and WILLIAMS, JJ, (6th Dist) and LEVINE, J, (8th Dist) sitting.

## RICHARDS, J.

The right to require a bill of particulars is provided by §13437-6 GC, but the defendants in omitting any request for information as to the nature of the bank doubtless did so because they already had full information, being officers of the bank. The statute (§13437-7 GC) provides that any defect in an indictment which does not tend to prejudice the substantial rights of the defendants upon the merits shall not be fatal, and that no indictment shall be quashed or dismissed, nor any conviction be reversed, on account of any defect in form or substance, unless objection be seasonably made. By federal statute, a state bank is prohibited from using the word "national" as a part of its name, and while it may not always follow that a bank, the name of which does not include the word "national," is necessarily a state bank, yet the defendants, having full knowledge that the Cos-

mopolitan Bank & Trust Company was a state bank, can in no sense have been prejudiced, and so the objection is without merit.

It must be noted that the prosecution was under §710-172 GC, and the charge was in the language of the statute in using the word "bank." It must not be assumed, from what has been said, that this court means to imply that the indictment is defective in form or substance. Each count concludes in the usual manner, that the acts charged are contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Ohio, so that the inference is necessarily drawn that the offense charged is against the statutes of Ohio, and that could not be true unless the bank named was a state bank. Furthermore, if the defendants were relying on the claim that the Cosmopolitan Bank & Trust Company was a national bank, and not a state bank, and that Congress had enacted provisions for punishing the embezzlement and misappropriation of funds of national banks, that would be defensive matter.

Proper application was made in the trial court for a change of the place of trial to another county, but, on consideration, the application was denied and the trial conducted in Hamilton county, and this action of the trial court is assigned as error. The right to make such application and have it determined by the court is given in the New Criminal Code, §13427-1 GC, which became effective on July 21, 1929. Under that section, it becomes the duty of the court to grant an application to have the trial conducted in another county "if it appear to the court, by affidavit or evidence in open court, that a fair and impartial trial cannot be had in the county where a cause is pending."

The indictment of the defendants followed the failure of the Cosmopolitan Bank & Trust Company, which had been doing business in Hamilton county. That bank, at the time it closed, had resources of approximately $10,000,000, fifty stockholders and 33,104 depositors. It also had several branches doing business in various places in the county. Much excitement existed throughout the county over the situation, various public hearings were held, and many rumors were started. Under these conditions, the defendants filed their application for a change of venue. A large number of affidavits were filed by them and by the state, perhaps about the same number on each side, and the matter was submitted to the trial judge, who, on consideration, denied the application, holding that a fair and impartial trial could be had in Hamilton county.

We think it may be considered as settled law in this state that the decision of a trial court on an application for change of venue, after hearing and considering affidavits on both sides, will not be reversed unless there has been an abuse of judicial discretion. If any doubt existed as to whether the defendants could have a fair trial in Hamilton county, that doubt must have been dispelled by what occurred in impaneling the jury. The record shows that a venire was issued for fifty citizens, that out of that number 39 were examined for service as prospective jurors, and that out of the 39 examined 24 qualified, of which number 12 were excused peremptorily, and the other 12 sat as jurors in the trial of the case. The facility with which a jury was secured seems to justify the ruling of the trial court in denying the application for a change of venue. It is said, however, that under the ruling in **Baxter v State, 91 Oh St 167,** 110 N. E., 456, the overruling of the application was prejudicial error. The language used in that case must be limited to the question which was then to be decided on the record before that court. It is fairly apparent in the Baxter case that no affidavits had been filed by the state, and it was said by counsel, after investigation, that such was the fact. With no affidavits filed by the state, and ten credible witnesses testifying against the ability to have a fair and impartial trial in Franklin county in that case, the decision reached by the court was compelled by the facts. The Supreme Court in that case held that §11416 GC, providing for a change of venue in civil cases where a corporation having more than 50 stockholders is a party is only applicable to civil cases; but that it defines the policy of the state in protecting the rights of litigants to a fair and impartial jury. Taking as true the statement made in the brief of counsel for Dorger and Dorger that the bank only had "stockholders to the number of fifty," §11416 GC, could have nothing to do with this case, for it only applies when a corporation has more than fifty stockholders. As all of the evidence in the Baxter case showed the impossibility of securing a fair and impartial trial in Franklin county, the conviction was reversed. The situation is radically different in the case at bar where there is a great mass of evidence on both sides relating to securing an impartial jury in Hamilton county and the trial court, after weighing the evidence, found that an impartial jury could be secured, and the conclusion thus reached was abundantly confirmed in impaneling the jury. We find no error in the action of the trial court in overruling the application for a change of venue.

Another ground on which a new trial is urged is the claim that one of the attorneys for the state was guilty of misconduct in his closing argument to the jury. The arguments of counsel on both sides are set forth in the record, and in order to understand the situation, which undoubtedly brought about the language of which complaint is made by plaintiffs in error, it is necessary to consider that which was said by counsel in argument to the jury. In argument to the jury, junior counsel for the defendants used the following language:

"Some few days ago, a week or so, I stopped at a home, and as I walked up a little child ran out as little children will do, and ran up to me, and he stopped, and he looked up with that bright, little, cheery face of his, and he said 'What is your name?' I told him. I said 'What is your name?' He says, 'Clarence Dorger, Jr.,' and then my throat filled up.

"I ask you to keep in your hearts and in your minds that little child and remember, remember, as you sign this verdict, when you have once written you cannot unwrite, you cannot undo, and I ask you to remember that."

This, of course, was a strong and wholly unwarranted and unjustified appeal to the jury to decide the case on sympathy rather than on the merits of the case. It was only after counsel for the defense had gone outside of the record, and used argument of this character, that counsel for the state used the language of which complaint is made. That language is as follows:

"It was shortly after the 9th day of June of this year, when a little woman with a baby on her arm came into my office upstairs here, and she said to me, 'Mr. Schwab, I had $1,400.00 in the Cosmopolitan Bank; that $1,400.00 represented a struggle of seventeen years.' I said to her, 'What work do you do?'

"Mr. Morris: I will object to the remark.

"The Court: The objection is overruled. I think in view of the argument by one of the counsel it is competent. You may proceed, Mr. Prosecutor.

"Mr. Morris: Note my exception.

"Mr. Schwab: (continuing) As I was saying to you when I was interrupted by counsel, this little woman told me that this $1,400.00 represented seventeen years of her work. She said, 'Today, Mr. Schwab, I have not a penny to my name. I have been reduced to a pauper. I cannot get my money. I cannot feed this little baby on my arm,

I know I am not a pauper, because for seventeen years I have put my money, as I made it, in that bank.' "

This language also was an appeal to sympathy, and was wholly improper, and could only be justified by the appeal to sympathy which had been indulged in by counsel for the defense. In each instance it would have been better if counsel had been stopped and reprimanded by the court, and the objectionable matter withdrawn from the jury. The trial court did not do that, but in the general charge instructed the jury that the legitimate scope of an argument is confined to facts in evidence, and the reasonable inferences to be drawn therefrom, and that if the arguments transgressed these grounds they should be disregarded. The trial judge also instructed the jury that they should not permit bias, prejudice, friendship, sympathy or any consideration except the law and the evidence to influence them in any way, and that to do so would be a violation of the oaths which they had taken. Our attention is called by counsel for plaintiffs in error to Pharr v. United States, 48 F. (2d), 767, 771, a decision by the Circuit Court of Appeals of the Sixth District, rendered on April 15, 1931. In the course of the opinion in that case, the court used the following language:

"As there must be another trial of the case, we deem it proper to call attention to other errors which should be avoided on the retrial. The references by counsel for the government, in his concluding argument, to the misfortunes of women, widows, and orphans resulting from the wrecking of the bank were in no sense pertinent to the presentation of the issues of the case, and were highly improper. The courts have uniformly condemned arguments of this character, the sole tendency of which is to defeat a fair trial."

We heartily concur in the language thus used by the court, but it is significant that while the court condemned the language, as we must condemn the language used in the instant case, it did not find it a ground of reversal. The language used by counsel for the state was invited and provoked by that which had been used by counsel for the defendants, and under all the circumstances we cannot find that there was such misconduct in argument as to justify a reversal of the judgment, particularly in view of the evidence and the instruction given by the court in the general charge.

It will not be possible to review the great

mass of evidence introduced in the trial of this case, nor would such review serve any useful purpose. A brief summary of a few of the facts will be sufficient to show the situation.

Frank J. Dorger and Clarence A. Dorger are father and son, and are both members of the bar and partners in practicing law, and have been such for many years. They have owned, for a long period of time, about 60 per cent of the stock of the Cosmopolitan Bank & Trust Company, and dominated and controlled its business. A great many of the large loans of the bank were negotiated and consummated in their law offices. They were not only officials of the bank, but attorneys for the bank. The evidence discloses that for a number of years preceding the failure of the bank they were actively engaged in a conspiracy, the substance of which was to violate the banking laws of Ohio and to unlawfully enrich themselves at the expense of the bank. The offenses charged in the indictment were the natural result of the carrying out of that conspiracy. The conspiracy being shown by the evidence, each defendant is bound by the acts and conduct of the other in furtherance of the conspiracy. A good illustration of the application of this principle is to be found in **State v Doty**, 94 Oh St, 258, 113 N. E., 811.

We have examined all of the errors assigned, but find none justifying a reversal of the judgment. It will therefore be affirmed.

WILLIAMS, J, concurs.

LEVINE, J, dissenting. I concur as to Clarence A. Dorger, but dissent as to the affirmance of the judgment against Frank J. Dorger, on the ground that in my opinion the evidence fails to connect him with the crimes charged in the indictment.

As to the state's claim of conspiracy between Frank J. Dorger and Clarence A. Dorger, so as to hold Frank J. Dorger responsible for the acts of Clarence A. Dorger, I am unable to reconcile myself to the theory of guilt on that ground, for the reason that, while the evidence tends to show similar acts prior to the acts set forth in the indictment, and, likewise, similar acts subsequent to the dates in the indictment, in which they were both engaged, yet, in so far as the charges set forth in the indictment are concerned the record does not support the same in so far as Frank J. Dorger is concerned. In my opinion quite the contrary is true. The acts charged in the indictment were almost exclusively the acts of Clarence A. Dorger, and nowhere do we

find, either by direct or circumstantial evidence, a participation in same by Frank J. Dorger.