DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment of conviction and sentence. The trial court, after a bench trial, found Dwight Riggs, defendant below and appellant herein, guilty of the crime of disorderly conduct in violation of R.C. 2917.11. Appellant raises one assignment of error for review:
"The Verdict Of The Municipal Court Of Washington County, Ohio Is Inconsistent With The Weight Of The Evidence Established At Trial."
¶ 2 On December 21, 2001, a fracas erupted that involved the victim Doug Gardner, Appellant Dwight Riggs, appellant's daughter Melissa Jo Smith, and appellant's son-in-law Brad Smith.[1] At trial, the victim and the defendants presented evidence that conflicted on every point.
 {¶ 3} Doug Gardner testified that on December 24, 2002, he was driving his vehicle on Jennings Hill Road and that he observed appellant standing on appellant's own property. Gardner stopped his vehicle to "discuss" damage to appellant's fence. Gardner stated that a confrontation began when appellant walked onto the public road and began cursing, then bumped chests and threw a punch that landed on Gardner's forehead. Gardner then pushed appellant backward into a ditch. At this time, Brad Smith struck Gardner in the head. Gardner then struck Smith. Soon, appellant and Smith took Gardner to the ground while appellant, Brad Smith and Melissa Smith began to hit Gardner. Appellant then ran to his barn and returned with two boards (two 2X6 boards approximately two feet in length) that he and Brad Smith used to strike Gardner.
 {¶ 4} During the melee, Mary Miracle, a "disinterested" witness, happened to drive by the property. Miracle testified that she observed (1) appellant, Smith and Smith all fighting with Gardner; (2) Melissa Smith run past her; and (3) appellant retrieve two boards from his barn and strike Gardner with the boards. Miracle blew her car horn until the participants stopped their activities.
 {¶ 5} Appellant testified that Gardner, who had previously been involved in a relationship with Melissa Riggs Smith, had continued to make unwanted advances toward appellant's daughter and that Gardner had earlier confronted appellant's daughter and Brad Smith. Also, in early December 2001 appellant became aware that some recently felled trees had damaged his fence. Appellant learned from the landowner (Burkhart) on which the trees were located that Gardner had cut the trees and that Gardner must repair the fence.
 {¶ 6} Appellant testified that, on the date in question, he stood on his property with his daughter (Melissa) and his son-in-law (Brad), when Gardner stopped his vehicle. Gardner then exited his vehicle and began to scream at appellant, using profanity and derogatory names, and threatening a law suit. Apparently, Gardner was upset that appellant had contacted Burkhart about the fence. When Gardner moved toward appellant, appellant told him to get back into his vehicle and to leave. Gardner did not comply with appellant's request and he continued to come toward appellant. Appellant acknowledged that he then left his property and walked onto the roadway to confront Gardner.
 {¶ 7} Once again, appellant stated, he asked Gardner to leave. Gardner then stepped on appellant's left foot. Appellant attempted to shove Gardner off of appellant's foot and Gardner struck appellant's chest with his fists. Appellant then lost his balance and stumbled backward into a ditch. Gardner then jumped atop appellant and Brad Smith jumped atop Gardner. Appellant ran to his barn, retrieved a 2X6 board and held up the board and threatened to strike Gardner. Gardner knocked the board from appellant's hands and Brad Smith again jumped atop Gardner. Gardner then knocked Brad Smith to the ground and began kicking him in the head. Appellant again ran to the barn to find another board and he told Melissa to call the Sheriff's Department. At this juncture, Miracle drove by and observed appellant and Brad Smith striking Gardner on the head with the two 2X6's. We note, however, that both appellant and Smith denied striking Gardner with the boards. When Melissa left the scene to call the Sheriff's Department, Gardner got into his vehicle and left the scene.
 {¶ 8} All combatants were eventually charged with a minor misdemeanor disorderly conduct violation. Prior to trial, however, the prosecution dismissed the charge against Gardner. After hearing the evidence and counsels' arguments, the court found appellant (and Melissa Smith and Brad Smith) guilty as charged.[2] The court fined appellant $100 and assessed court costs. Appellant filed a timely notice of appeal.
 {¶ 9} In his sole assignment of error, appellant asserts that the trial court's judgment is against the manifest weight of the evidence. Specifically, appellant argues that the trier of fact should have believed appellant's account of the story and accepted that Gardner initiated the altercation and that appellant acted only in self defense. The prosecution argues that (1) the evidence adduced at trial supports the trial court's judgment and (2) appellant's self-defense argument should be rejected because (a) appellant initiated the physical confrontation and, (b) at one point during the melee, appellant and Smith could have ended the altercation but, instead, continued the fight.
 {¶ 10} Our analysis begins with the premise that self-defense is an affirmative defense and the burden of going forward with evidence to prove self-defense rests entirely on the accused. See R.C. 2901.05(A); also see State v. Palmer (1997), 80 Ohio St.3d 543, 563, 687 N.E.2d 685,703; State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, at the syllabus, affirmed in Martin v. Ohio (1987), 480 U.S. 228,94 L.Ed.2d 267, 107 S.Ct. 1098. To prove self-defense, the evidence must show that: (1) the accused was not at fault in creating the situation that gave rise to the affray; (2) the accused has a bona fide belief that he was in imminent danger of harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or to avoid the danger. State v. Williford
(1990), 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, 1281; State v. Robbins
(1979), 58 Ohio St.2d 74, 388 N.E.2d 755, at paragraph two of the syllabus; State v. Melchior (1978), 56 Ohio St.2d 15, 20-21,381 N.E.2d 195, 199. See, also, Stewart v. State (1852), 1 Ohio St. 66;State v. Doty (1916), 94 Ohio St. 258, 113 N.E. 811.
 {¶ 11} In the case sub judice, we believe that the evidence adduced during the trial establishes that appellant was at fault in creating the situation that gave rise to the altercation. This evidence reveals that appellant physically confronted the victim in the public roadway. Thus, appellant's own actions caused the altercation and a self-defense claim is inappropriate. Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense. State v. Vines (May 29, 1975), Cuyahoga App. No. 33871, unreported, citing Kohner v. State (1927), 6 Ohio L.Abs. 201; State v. Gibbs (Jan. 28, 1982), Lake App. No. 9-018, unreported, State v. Sanchez (Apr. 24, 1986), Cuyahoga App. No. 50566, unreported. See, also, State v. Moore (1994), 97 Ohio App.3d 137,646 N.E.2d 470; State v. Smith (June 27, 1985), Franklin App. No. 94APA12-1702; State v. Duiguid (May 12, 1983), Cuyahoga App. No. 45526, unreported. Thus, we agree with the trial court's conclusion that the evidence adduced below did not support appellant's self-defense claim. Although we do not condone the victim's alleged conduct of contributing to the confrontation by using profanity and derogatory language, in this instance a verbal harangue does not justify appellant entering the encounter and then asserting a self defense claim.
 {¶ 12} Appellant asserts, however, that the trial court's judgment is against the manifest weight of the evidence. We disagree.
 {¶ 13} It is fundamental that the weight to be afforded the evidence and the credibility to be given to the testimony of the witnesses are issues to be determined by the trier of fact. See State v.Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763, 768; State v.Frazier (1995), 73 Ohio St.3d 323, 339, 652 N.E.2d 1000, 1014; State v.Williams (1995), 73 Ohio St.3d 153, 165, 652 N.E.2d 721, 732. As such, the trier of fact may believe all, part or none of the testimony of each witness who appeared before it. See State v. Long (1998),127 Ohio App.3d 328, 335, 713 N.E.2d 1, 5; State v. Nichols (1993),85 Ohio App.3d 65, 76, 619 N.E.2d 80, 88; State v. Harriston (1989),63 Ohio App.3d 58, 63, 577 N.E.2d 1144, 1147. We also acknowledge that the trier of fact is in a much better position than that of an appellate court to view the witnesses and observe their demeanor, their gestures and their voice inflections, and to use those observations to weigh the credibility of their testimony. See Myers v. Garson (1993),66 Ohio St.3d 610, 615, 614 N.E.2d 742, 745; Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, reviewing courts should not second guess the trier of fact on matters of evidentiary weight and witness credibility.
 {¶ 14} We recognize that two vastly conflicting witness accounts exist concerning what actually transpired in this case. Gardner testified that appellant walked to the public roadway and attacked him without provocation. Appellant claimed that he acted in self defense to repel Gardner's attack. Obviously, the trier of fact accepted the victim's testimony and we find no discernable reason why we should reject the trial court's determination. This Court will not reverse a conviction as being against the manifest weight of the evidence unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Earle (1997), 120 Ohio App.3d 457, 473,698 N.E.2d 440, 450; State v. Garrow (1995), 103 Ohio App.3d 368,370-371, 659 N.E.2d 814, 816; State v. Davis (1988), 49 Ohio App.3d 109,113, 550 N.E.2d 966, 969. In the case sub judice the trier of fact simply afforded greater weight to the victim's testimony, and the testimony of the disinterested passerby Mary Miracle, than to appellant and appellant's daughter and son-in-law. This was well within the trier of fact's province.
 {¶ 15} Accordingly, based upon the foregoing reasons we hereby affirm the trial court's judgment.
Evans, P.J. Harsha, J.: Concur in Judgment Opinion
[1] The companion cases that involve Melissa Jo Smith and Brad Smith are State v. Smith, Washington App. No. 02CA73 and State v. Smith, Washington App. No. 02CA75.
[2] R.C. 2917.11, the disorderly conduct statute, provides in pertinent part:
A. No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following:
1. Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior.