[Cite as *State v. Williams*, 2011-Ohio-2463.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-MA-13 |
| | ) | |
| MONIQUE WILLIAMS, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:          Criminal Appeal from Court of Common
                                   Pleas of Mahoning County, Ohio
                                   Case No. 08CR485

JUDGMENT:                          Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee             Paul Gains
                                   Prosecutor
                                   Ralph Rivera
                                   Assistant Prosecutor
                                   21 West Boardman Street, 6th Floor
                                   Youngstown, Ohio 44503-1426

For Defendant-Appellant            Attorney Douglas King
                                   91 West Taggart Street
                                   P.O. Box 85
                                   East Palestine, Ohio 44413

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: May 16, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, Monique Williams, appeals from a Mahoning County Common Pleas Court judgment convicting her of murder and an accompanying firearm specification following a jury trial.

{¶2} In the evening hours of April 21, 2008, appellant was at home with her husband, Julius Williams. The couple resided on Norwood Avenue on Youngstown's north side. Julius had been drinking and the couple was fighting. Sometime after 9:00 p.m., appellant called 911 because Julius had been shot. When officers arrived on the scene, she told them that Julius was choking her, so she shot him. Appellant also showed police the revolver sitting on the couch. Julius died at the hospital that night from two gunshot wounds.

{¶3} Police arrested appellant and took her to the station for an interview. During the interview, appellant stated that Julius was drunk and they were arguing. She stated that he choked her and threatened her life and the lives of various members of her family. Appellant stated that Julius then stopped choking her, fell down to the floor, and grabbed her from behind. She stated that she grabbed their gun from the dining room table and shot him twice while he was on the floor.

{¶4} A Mahoning County grand jury indicted appellant on one count of murder, a first-degree felony in violation of R.C. 2903.02(A)(D), and a firearm specification in violation of R.C. 2941.145(A).

{¶5} The matter proceeded to a jury trial where the jury found appellant guilty as charged. The trial court subsequently sentenced appellant to a prison term of 15 years to life in addition to three years actual incarceration for the firearm specification, to be served consecutively.

{¶6} Appellant filed a timely notice of appeal on January 19, 2010.

{¶7} Appellant raises six assignments of error, the first of which states:

{¶8} "THE TRIAL COURT'S INSTRUCTIONS WERE FATALLY DEFECTIVE AS TO DEFENDANT/APPELLANT'S AFFIRMATIVE DEFENSE OF SELF-DEFENSE SUCH THAT HER CONVICTION MUST BE VACATED AND A NEW TRIAL ORDERED."

{¶9}   In instructing the jury on the affirmative defense of self-defense, the trial court stated:

{¶10}  "Now, to establish a claim of self-defense, the defendant must prove, by the greater weight of the evidence, that she was not at fault in creating the situation giving rise to the shooting of Julius Williams, and she had reasonable grounds to believe, and an honest belief, even if mistaken, that she was in imminent or immediate danger of death, or great bodily harm, and *that her only reasonable means of retreat, escape, or withdrawal from such danger was by the use of deadly force, and she had not violated any duty to retreat or escape to avoid the danger.*

{¶11}  "*The defendant had a duty to retreat if* she was at fault in creating this situation giving rise to the shooting of Julius Williams, or did not have reasonable grounds to believe, and an honest belief, that she was in imminent or immediate danger of death or great bodily harm or that *she had a reasonable means of escape from that danger other than by the use of deadly force.*"  (Emphasis added; Tr. 507-508).

{¶12}  Appellant argues that these jury instructions regarding self-defense were defective.   Appellant asserts that there is no duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home.   Citing *State v. Thomas* (1997), 77 Ohio St.3d 323.   Therefore, she contends that the court's instruction that she had a duty to retreat from her home before resorting to lethal force was erroneous.

{¶13}  Appellant did not object to the jury instructions.  Absent plain error, the failure to object to a jury instruction constitutes a waiver of the issue on appeal. *State v. Underwood* (1983), 3 Ohio St.3d 12, at the syllabus; Crim.R. 30.  Plain error should be invoked only to prevent a clear miscarriage of justice.  Id. at 14.  Plain error is one in which but for the error, the outcome would have been different.  *State v. Long* (1978), 53 Ohio St.2d 91, 97.

{¶14}  A defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence.  *State v. Sneed*

(1992), 63 Ohio St.3d 3, 9. In examining the jury instructions we must review the court's charge as a whole, not in isolation, in determining whether the jury was properly instructed. *State v. Burchfield* (1993), 66 Ohio St.3d 261, 262.

**{¶15}** The affirmative defense of self-defense contains three elements. The defendant must prove that she: (1) was not at fault in creating the situation that gave rise to the fight; (2) had a bona fide belief that she was in imminent danger of death or great bodily harm and that the use of force was her only means of escape; and (3) did not violate any duty to retreat or avoid the danger. *State v. Williford* (1990), 49 Ohio St.3d 247, 249, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, at paragraph two of the syllabus. Generally, one has a duty to retreat, if possible, before resorting to lethal force. Id. at 250. However, there is no duty to retreat from one's own home. Id.

**{¶16}** In *Thomas*, on which appellant relies, the Ohio Supreme Court expanded on this rule, holding: "There is no duty to retreat from one's own home before resorting to lethal force in self-defense *against a cohabitant with an equal right to be in the home.*" (Emphasis added.) 77 Ohio St.3d at the syllabus. In that case, Thomas shot and killed Flowers, her live-in boyfriend. At trial, she admitted to shooting Flowers but claimed that she acted in self-defense based on battered woman's syndrome. The Court determined that the duty to retreat before resorting to lethal force does not apply to a person who is attacked in her home by someone else who also has equal rights to the home. Id. at 327-28.

**{¶17}** The self-defense elements are cumulative meaning that the trial court must give a self-defense instruction when all three elements are raised by the evidence, but it need not give such an instruction when every element of the defense is not raised by the evidence. *State v. Smith*, 10th Dist. No. 04AP-189, 2004-Ohio-6608, at ¶17, citing *State v. Jackson* (1986), 22 Ohio St.3d 281, 284. When determining whether sufficient evidence has been adduced at trial to warrant a self-defense instruction, the evidence should be construed in the light most favorable to the defendant. Id. at ¶¶19-21.

{¶18} The evidence at trial as to self-defense was as follows.

{¶19} Several officers testified that when they arrived on the scene, appellant told them that Julius was choking her, so she shot him. (Tr. 181, 228, 238). Photographs taken of appellant that night at the police station revealed several red marks and scratches around the area of her neck. (Tr. 211-12; Exs. 31-37). During appellant's interview at the police station, she stated that when she and Julius returned from her brother's house on the night in question Julius was "real drunk." She stated that he threatened to kill her family and they started arguing. Appellant stated that Julius grabbed, choked, and pulled her. She further stated that Julius threatened to kill her and to "show her death." Appellant stated that Julius was falling down drunk and he was on the floor pulling on her when she grabbed the gun from their dining room table and shot him twice. She stated that she did not know why she did not try to run away, but also stated that she was afraid that Julius was going to get up and try to kill her.

{¶20} This evidence, when construed in the light most favorable to appellant, warranted a self-defense instruction. The evidence, if believed, could demonstrate that appellant had a bona fide belief that she was in imminent danger of death or great bodily harm and that the use of force was her only means of escape. Further, based on *Thomas*, supra, appellant did not violate any duty to retreat or avoid the danger. The only element of self-defense on which the evidence was minimal was whether appellant was at fault in creating the situation. However, given the evidence that Julius was drunk and threatening to kill appellant's family, one could reasonably conclude that it was Julius and not appellant who created the situation. And the trial court also obviously believed that the evidence warranted a self-defense instruction. Thus, the state's argument that a self-defense instruction was not warranted is meritless.

{¶21} Furthermore, again based on *Thomas*, supra, the trial court's instruction was incorrect. The court instructed the jury that appellant had a duty to retreat if she had a reasonable means of escape from the danger other than by the use of deadly

force.  This was incorrect.  Had appellant not been in her own home, she would have had a duty to retreat.  However, because she was in her own home, this duty did not exist.

**{¶22}**  The state presented evidence and made arguments that the house had two doors and appellant should have been able to flee from the home instead of shooting Julius.  It is quite possible that this evidence coupled with the trial court's instruction that appellant had a duty to retreat if possible would lead the jury to conclude that they could not find appellant acted in self-defense because she violated a duty to retreat.  Likewise, had the jury been properly instructed that appellant had no duty to retreat, it is quite possible that the jury may have found she acted in self-defense.  Thus, but for the erroneous jury instruction, it is quite possible that the outcome of appellant's trial would have been different.  In other words, we are faced with a case of plain error.

**{¶23}**  Accordingly, appellant's first assignment of error has merit.

**{¶24}**  Appellant's second assignment of error states:

**{¶25}**  "DEFENDANT/APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL COUNSEL FAILED TO OBJECT TO EVIDENCE AND ARGUMENT INTENDED TO ESTABLISH THAT SHE VIOLATED A DUTY TO RETREAT AND/OR FAILED TO OBJECT TO THE TRIAL COURT'S ERRONEOUS JURY INSTRUCTIONS ON DEFENDANT/APPELLANT'S DUTY TO RETREAT."

**{¶26}**  Given the merit of appellant's first assignment of error, this assignment of error is now moot.

**{¶27}**  Appellant's third assignment of error states:

**{¶28}**  "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING THE DEFENDANT/APPELLANT'S REQUEST FOR A JURY VIEW."

**{¶29}**  At the beginning of trial, appellant's counsel requested a jury view of the inside of appellant's and Julius's house.  (Tr. 17).  Counsel argued that a view of the house would allow the jury to see why it was impossible for appellant to retreat.  (Tr. 19).  The trial court denied the requested jury view stating:

**{¶30}** "I have freely granted requests for jury views made by either the state or the defense. But having said that, some of the pretrial discussions with the court and counsel have reflected that this house was padded, locked. The house was in foreclosure, or it is in foreclosure; that somehow the padlock has now been removed. We're not certain how. Whether or not we have the legal ability or authority to enter the house, or whether or not it is, in fact, the property of a third party, whether that's a bank or another mortgage institution, I have a concern about anyone legally entering this property.

**{¶31}** "* * *

**{¶32}** "And additionally, and quite frankly, primarily, besides the issue of the legal ability to enter the house, if it's in foreclosure, that there was just a shooting in that neighborhood within the past day or two, and this court has grave concern for the safety of the jury and counsel if they should accompany the jury if this view is granted." (Tr. 20-22).

**{¶33}** Appellant now argues that the court's denial of the jury view was an abuse of discretion. She contends that a view of the inside of the house was necessary given the state's argument that she should have retreated instead of shooting her husband. Appellant asserts that going into the house was the only way the jury could have understood appellant's predicament on the night in question. Finally, she points out that the court stated that it had freely granted jury views in the past, which she argues makes the denial unreasonable.

**{¶34}** R.C. 2945.16 authorizes a trial court to allow the jury to view the place at which a material fact occurred. Whether to allow such a jury view is a matter within the trial court's discretion. *State v. Loveless*, 7th Dist. No. 05-JE-60, 2007-Ohio-1560, at ¶62.

**{¶35}** Here the trial court questioned its authority to allow the jury into the Norwood Avenue house where the shooting occurred given the fact that it may have been padlocked shut and in foreclosure. But its primary reason for not allowing the jury view was the court's "grave concern" for the jurors' and counsel's safety. The

house was located on the city's north side, which is known to be a high-crime area. And more pressing was the fact that another shooting had just taken place in the neighborhood in the last two days. Given the court's concern for the safety of everyone involved, its decision to deny the jury view was not an abuse of discretion.

**{¶36}** Furthermore, appellant was still able to present other evidence in order to establish why it was difficult for her to simply run from the house. Appellant was able to offer testimony about the layout of the house and the various security locks. She was also able to present photographs of the inside of the house. Thus, the court's denial of the jury view did not preclude appellant from establishing facts she wished to make known to the jury.

**{¶37}** Accordingly, appellant's third assignment of error is without merit.

**{¶38}** Appellant's fourth assignment of error states:

**{¶39}** "DEFENDANT/APPELLANT WAS DENIED EQUAL PROTECTION OF THE LAW WHEN THE GOVERNMENT IMPERMISSIBLY EXCLUDED THE ONLY AFRICAN AMERICAN JUROR FROM THE JURY VENIRE WHERE DEFENDANT/APPELLANT HERSELF WAS AFRICAN AMERICAN."

**{¶40}** Appellant is an African-American woman. (Tr. 125). During voir dire, the state used one of its peremptory challenges to excuse the only African American juror on the panel at the time. (Tr. 124). Appellant took issue with this and requested that the prosecutor provide a race-neutral explanation for the excusal. (Tr. 125). As for the race-neutral explanation, the prosecutor pointed out that on her jury questionnaire, the excused juror indicated that she suffered from depression, stress, and mental issues. (Tr. 127). The prosecutor explained that these issues had all come up concerning appellant. (Tr. 127).

**{¶41}** Appellant now argues that she was denied equal protection of the law when the court allowed the state to use one of its peremptory challenges to excuse the only black juror on the jury panel. Appellant contends that the "race neutral" explanation offered by the state was illegitimate because her mental health issues

were part of pretrial competency proceedings and her mental health issues would not come into evidence during the trial.

**{¶42}** The Ohio Supreme Court has set out the steps for analyzing a challenge pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, as follows:

**{¶43}** "First, the opponent of the peremptory strike must make a prima facie case of racial discrimination. Second, if the trial court finds that the opponent has fulfilled this requirement, then the proponent of the strike must come forward with a racially neutral explanation for the strike. * * * The 'explanation need not rise to the level justifying exercise of a challenge for cause.' [*Batson*, 476 U.S.] at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

**{¶44}** "Third, if the proponent puts forward a racially neutral explanation, the trial court must decide, on the basis of all the circumstances, whether the opponent has proved purposeful racial discrimination. * * * The burden of persuasion is on the opponent of the strike." *State v. Herring* (2002), 94 Ohio St.3d 246, 255-56.

**{¶45}** An appellate court will not reverse the trial court's decision of no discrimination unless it is clearly erroneous. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 583.

**{¶46}** In this case, when the state used a peremptory challenge to excuse the only African-American juror sitting in the jury box at the time, appellant raised a *Batson* challenge making a prima facie case of discrimination. The burden then shifted to the state to offer a race-neutral decision for excusing this juror. The prosecutor met this burden.

**{¶47}** Appellant suffered from some psychological issues, which were brought out during the pretrials when she was initially deemed incompetent to stand trial. And although the trial court excluded this testimony, appellant sought to introduce testimony by the county jail medical director as to the medications she was prescribed for depression, anxiety, and psychological disorders while she was in jail. (Tr. 360-64). These were very similar psychological issues as those listed by the excused juror who stated that she suffered from depression, stress, and mental

issues. (Tr. 127). It was reasonable that the state would be concerned that a juror who shared these types of issues in common with appellant might be more sympathetic to appellant's case. And though appellant argued that her mental condition would not be an issue in the trial, she herself tried to elicit testimony that would bring her mental issues to the jury's attention. Hence, the state put forth a valid, race-neutral explanation for its use of the peremptory challenge.

**{¶48}** For these reasons, the trial court's determination that appellant failed to prove purposeful discrimination was not clearly erroneous. Accordingly, appellant's fourth assignment of error is without merit.

**{¶49}** Appellant's fifth assignment of error states:

**{¶50}** "THE VERDICT OF MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE JURY CLEARLY LOST ITS WAY AND BASED ON THE EVIDENCE PRESENTED SHOULD HAVE FOUND DEFENDANT/APPELLANT ACTED IN SELF-DEFENSE OR, AT THE VERY LEAST, THAT SHE WAS GUILTY OF VOLUNTARY MANSLAUGHTER."

**{¶51}** Because we have already determined that the jury instructions were defective, appellant's allegation that her conviction was against the manifest weight of the evidence is now moot.

**{¶52}** Appellant's sixth assignment of error states:

**{¶53}** "DEFENDANT/APPELLANT WAS DENIED HER RIGHT TO A FAIR TRIAL PURSUANT TO THE DOCTRINE OF CUMULATIVE ERROR."

**{¶54}** Appellant contends here that due to the cumulative effect of the errors she raised in her first five assignments of error, she was denied a fair trial.

**{¶55}** An appellate court may reverse a defendant's conviction based on the doctrine of cumulative error. Cumulative error occurs when errors deemed separately harmless deny the defendant a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, at paragraph two of the syllabus.

**{¶56}** In this case, only appellant's first assignment of error has merit and warrants reversal. Therefore, the cumulative error doctrine does not apply here.

{¶57} Accordingly, appellant's sixth assignment of error is without merit.

{¶58} In addition to the above six assignments of error, appellant's counsel also raises what he terms "*Anders* assignments of error." In these two assignments of error, counsel states that pursuant to *Anders v. California* (1967), 386 U.S. 738, he does not believe that these assignments of error raise reversible issues but he is nonetheless submitting them to the court.

{¶59} In this district, an *Anders* brief is also referred to as a *Toney* brief pursuant to *State v. Toney* (1970), 23 Ohio App.2d 203. Relying on *Anders*, in *Toney* this court recognized an indigent defendant's constitutional right to court-appointed counsel for direct appeal of their conviction. Id., at paragraph one of the syllabus. After a conscientious examination of the record, counsel should present any assignments of error which could arguably support the appeal. Id., at paragraph two of the syllabus. If instead counsel determines that the defendant's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, then counsel should inform the appellate court and the defendant of that by brief and ask to withdraw as counsel of record. Id., at paragraph three and four of the syllabus. The defendant is then given the opportunity to raise, pro se, any assignments of error he chooses. Id., at paragraph four of the syllabus. The appellate court then is duty bound to examine the record, counsel's brief, and any pro se arguments, and determine if the appeal is wholly frivolous. Id., at paragraph five of the syllabus. If after determining that the appeal is wholly frivolous, then the appellate court should permit counsel to withdraw and affirm the judgment of conviction and sentence. Id., at paragraph seven of the syllabus.

{¶60} As can be seen from the above statement of the law pursuant to *Toney* and *Anders*, this case is unusual in that counsel raised six potential assignments of error that he argued support appellant's appeal. He has not alleged that appellant's appeal is frivolous nor has he asked to withdraw as counsel of record. We will briefly touch on the two issues counsel raises.

{¶61} The first of these *Anders* assignments of error states:

**{¶62}** "THE TRIAL COURT ERRED IN PERMITTING THE 911 AUDIO RECORDING, THE RECORDED DVD STATEMENT OF THE DEFENDANT/APPELLANT AND THE WRITTEN STATEMENT OF DEFENDANT/APPELLANT TO BE REVIEWED BY THE JURY DURING THEIR DELIBERATIONS ONCE THEY HAD BEEN PLAYED IN OPEN COURT."

**{¶63}** Here appellant argues that the trial court should not have allowed certain exhibits to go back to the jury room while the jury was deliberating. Those exhibits were the 911 tape recording (Ex. 42), the DVD of appellant's statement to police (Ex. 61), appellant's Miranda waiver (Ex. 44), and appellant's written statement (Ex. 45). Appellant notes that her counsel objected to the court allowing these exhibits to go back to the jury room arguing that allowing the jury to review them would only over emphasize their importance.

**{¶64}** "'It is common practice to send exhibits admitted into evidence into the jury room. * * * Once in the jury room, the exhibits may be examined by the jury to any extent it desires. * * * We find no prejudicial error in the jury's viewing a second time an exhibit properly admitted into evidence.'" *State v. Clark* (1988), 38 Ohio St.3d 252, 257, quoting *State v. Fellows* (1975), 47 Ohio App.2d 154, 158-59. Furthermore, it is within the trial court's discretion whether to send a defendant's confession into the jury room. Id., citing *State v. Doty* (1916), 94 Ohio St. 258.

**{¶65}** There is no indication in this case the trial court abused its discretion in sending the DVD of appellant's interview or her written statement back to the jury room along with the other properly admitted exhibits. Accordingly, appellant's first *Anders* assignment of error is without merit.

**{¶66}** The second *Anders* assignment of error states:

**{¶67}** "DEFENDANT/APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HER TRIAL COURT COUNSEL FAILED TO DEVELOP BATTERED WOMAN'S SYNDROME EVIDENCE AS IT RELATED TO HER AFFIRMATIVE DEFENSE AS SELF-DEFENSE."

**{¶68}** Appellant claims here that her counsel may have been ineffective for failing to develop battered woman's syndrome evidence to support her defense. But in support of trial counsel's efforts, appellant cites to numerous documents he states were contained in trial counsel's files that demonstrate that trial counsel did explore presenting a battered woman's syndrome defense.

**{¶69}** Firstly, the documents appellant cites to were contained in her trial counsel's file and are not part of the record in this case. Thus, we cannot consider them.

**{¶70}** Secondly, whether or not to present a battered woman's syndrome defense is a matter that falls within the realm of trial strategy. See *State v. Sallie* (1998), 81 Ohio St.3d 673. On review, this court will not second-guess strategic decisions of trial counsel. *State v. Carter* (1995), 72 Ohio St.3d 545, 558.

**{¶71}** Accordingly, appellant's second *Anders* assignment of error is without merit.

**{¶72}** For the reasons stated above, appellant's conviction is hereby reversed. This matter is remanded for a new trial.

Vukovich, J., concurs.

Waite, P.J., concurs.